STATE of Wisconsin, Plaintiff-Respondent,

v.

James E. BROWN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP2662–CR. Oral argument December 6, 2005.
—Decided July 12, 2006.*

2006 WI 100

(Also reported in 716 N.W.2d 906.)

594

For the defendant-appellant-petitioner there were briefs and oral argument by *Richard D. Martin,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *William C. Wolford,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished court of appeals decision[1] affirming the circuit court's denial of James Brown's (Brown) postconviction motion to withdraw his guilty pleas to three felony charges. Brown contends that he did not enter his guilty pleas knowingly, intelligently, and voluntarily. To support this claim, he points to the transcript of the plea hearing and alleges that the circuit court judge failed to follow some of the duties imposed by Wis. Stat. § 971.08 (2001–02)[2] and *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

■ .

¶ 2. This review presents the question whether the circuit court erred by denying Brown's postconviction motion without an evidentiary hearing. A defendant is entitled to an evidentiary hearing on a motion to withdraw a guilty plea when (1) the defendant makes a prima facie showing that the circuit court's plea colloquy did not conform with § 971.08 or other procedures mandated at a plea hearing; and (2) the defendant alleges he did not know or understand the information that should have been provided at the plea hearing. *State v. Hampton,* 2004 WI 107, ¶ 46, 274 Wis. 2d 379, 683 N.W.2d 14; *Bangert,* 131 Wis. 2d at 274. In this case, the parties dispute whether Brown has met these two requirements.

---

[1] *State v. Brown,* No. 2003AP2662–CR, unpublished order (Wis. Ct. App. Feb. 21, 2005).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

¶ 3. First, Brown contends his guilty plea was not knowing, intelligent, and voluntary because the circuit court (1) failed to enumerate the elements of the charges to which he pleaded guilty; (2) failed to inform him of the constitutional rights he waived by pleading guilty; and (3) failed to adequately explain the potential punishment he faced.

¶ 4. Second, Brown alleges, somewhat indirectly, that he did not understand information that should have been presented at the plea hearing.

¶ 5. Based on the transcript of the plea hearing, we conclude Brown has made a prima facie showing that the circuit court did not fully comply with Wis. Stat. § 971.08 and *Bangert*. The circuit court did not satisfactorily enumerate, explain, or discuss the facts or elements of the three felonies in a manner that would establish for a reviewing court that Brown understood the nature of the charges to which he pleaded guilty. We further conclude that Brown adequately alleged that he did not understand the nature of the charges to which he pleaded guilty. Finally, we conclude that there were shortcomings with respect to Brown's apparent waiver of constitutional rights.

¶ 6. Accordingly, we reverse the court of appeals and remand to the circuit court for an evidentiary hearing at which the State will have an opportunity to present evidence that Brown understood the nature of the charges to which he pleaded guilty and understood the rights he gave up. *See Hampton,* 274 Wis. 2d 379, ¶ 46. If the State cannot prove by clear and convincing evidence that Brown understood the nature of the charges and the constitutional rights he gave up, the circuit court shall grant Brown's motion to withdraw his guilty pleas.

## I. FACTS AND PROCEDURAL HISTORY

¶ 7. The criminal complaint alleges that on July 19, 2001, Brown and two other males approached Steven Booth at a Milwaukee hotel where Booth worked. Brown and the other men robbed Booth at gunpoint and forced him into the hotel room where Booth lived with his girlfriend. Booth's girlfriend was sleeping in the room when the men entered. Once in the room, Brown and his friends rummaged through the victims' belongings, forced Booth into the bathroom, and each sexually assaulted Booth's girlfriend. Some of these allegations are in dispute.

¶ 8. The criminal complaint charged Brown with first-degree sexual assault by use or threat of use of a dangerous weapon,[3] armed burglary,[4] and armed robbery.[5] Subsequently, the State filed an information that added a charge of kidnapping.[6] On all four counts, Brown was named as party to the crime pursuant to Wis. Stat. § 939.05. All four counts were Class B felonies that carried maximum penalties of 60 years. Wis. Stat. § 939.50(3)(b).

¶ 9. At the time of these crimes, Brown was a 17–year-old high-school dropout. He had completed ninth grade but was illiterate and had been diagnosed with reading and mathematics disorders. At the sentencing hearing, Brown's attorney told the court: "Mr. Brown is not a slow reader. He's not a poor reader. He is a nonreader. He's as deficient in this regard as anybody I've ever represented in 20–some years."

---

[3] Wis. Stat. § 940.225(1)(b).

[4] Wis. Stat. § 943.10(2)(a).

[5] Wis. Stat. § 943.32(1)(a) and (2).

[6] Wis. Stat. § 940.31(1)(b).

¶ 10. At Brown's initial appearance, the court stated the three offenses with which Brown was originally charged and told Brown that each charge carried a maximum penalty of 60 years. In his next court appearance, Brown waived his right to a preliminary hearing. Neither the criminal complaint nor the information was ever read to Brown in court before the plea hearing.

¶ 11. After plea negotiations, Brown pleaded guilty, as a party to the crime, to first-degree sexual assault with a weapon, armed robbery with use of force, and kidnapping, at a hearing before Milwaukee County Circuit Judge Jeffrey Wagner.[7] Because of Brown's illiteracy, no plea questionnaire and waiver of rights form was completed. Instead, Brown's attorney, Patrick Earle, advised the circuit court that the requirements for a valid guilty plea, including "the factual basis," would have to be done orally.

¶ 12. Despite this notice, the circuit court never addressed any of the elements of the crimes to which Brown pleaded guilty. The entire exchange between the circuit court and Brown concerning the nature of the charges was as follows:

THE COURT: But we need a signed Guilty Plea Questionnaire and Waiver of Rights form.

MR. EARLE: Okay.[8]

THE COURT: If I have one, then you can—I mean do you feel comfortable with what you've

---

[7] In exchange for his guilty pleas, the State agreed to dismiss the charge of armed burglary and have it read in at sentencing.

[8] Completed documents were never supplied for the record.

607

said to him and gone over the provisions that are contained in that form, right?

MR. EARLE: I've gone over every word.

THE COURT: All right. Then he can sign the one that he's got.

MR. EARLE: I wasn't able to put all the elements of all three offenses on each one. I started to fill out one and decided I could do it orally with him. So I don't have three for him to sign, just this one. I would have to do three more.

THE COURT: But he understands those elements of the offenses?

MR. EARLE: Yes.

THE COURT: You've gone over those elements with him?

MR. EARLE: Yes.

THE COURT: Okay. Sir, do you understand what you're charged with, the charges against you? The first degree sexual assault while armed; is that correct?

THE DEFENDANT: Yeah.

THE COURT: And the armed robbery, party to a crime?

THE DEFENDANT: Yeah.

THE COURT: And the kidnapping, party to a crime?

THE DEFENDANT: Yeah.

THE COURT: You have read the Complaint or had it read to you?

THE DEFENDANT: Yeah.

THE COURT: So you understand it?

THE DEFENDANT: Yes.

. . . .

THE COURT: You understand the charges to which you're pleading to?

THE DEFENDANT: Yeah.

. . . .

THE COURT: And you've gone over the elements with your lawyer, right?

THE DEFENDANT: Yeah.

THE COURT: And, Counsel, you've gone over those elements specific with him as to each one of those counts?

MR. EARLE: Yes.

THE COURT: And he appeared to understand those elements the State would have to prove?

MR. EARLE: Yes.

¶ 13. After accepting Brown's guilty pleas, the circuit court added:

THE COURT: Now, you've gone over the concept of party to a crime with your lawyer, also, right?

THE DEFENDANT: Yeah.

THE COURT: You understand that also?

THE DEFENDANT: Yeah.

¶ 14. Next, the circuit court reviewed the constitutional rights Brown waived by pleading guilty, including the right to a trial; the right to a jury and a unanimous verdict; the right not to incriminate himself; the right to testify and present evidence; the right to subpoena witnesses; the right to confront witnesses; and the right to make the State prove the elements of each count beyond a reasonable doubt. Additionally, the circuit court explained that each charge carried a maximum sentence of 60 years.

¶ 15. Based on the colloquy, the circuit court accepted Brown's guilty pleas. At the subsequent sentencing hearing, Brown was sentenced to 25 years initial confinement and 25 years extended supervision by Circuit Judge M. Joseph Donald.[9]

¶ 16. After sentencing, Brown timely filed a postconviction motion under Wis. Stat. § 809.30, seeking to withdraw his guilty pleas on the basis that the pleas were not knowing, intelligent, and voluntary. The motion alleged that the elements of the offenses were not recited or discussed, that the record failed to demonstrate Brown understood the elements of the charges or the constitutional rights he was waiving, and that the record lacked an accurate and complete recitation of the potential penalties or the possibility of consecutive sentences. The motion also alleged indirectly that

---

[9] The circuit court sentenced Brown to 10 years for the sexual assault, and 40 years each for the armed robbery and kidnapping. The 40–year sentences are concurrent to each other, and consecutive to the 10–year sentence. The sentences are bifurcated as follows: for the sexual assault, 5 years initial confinement and 5 years extended supervision; for the armed robbery, 20 years initial confinement and 20 years extended supervision; for the kidnapping, 20 years initial confinement and 20 years extended supervision.

Brown did not understand the information that should have been presented at the plea hearing.

¶ 17. Judge Wagner denied Brown's motion without an evidentiary hearing, finding that the plea colloquy met the requirements of both Wis. Stat. § 971.08 and *Bangert.* The court of appeals summarily affirmed, and we granted Brown's petition for review.

## II. STANDARD OF REVIEW

¶ 18. When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in "manifest injustice." *State v. Thomas,* 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836. One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter the plea. *State v. Trochinski,* 2002 WI 56, ¶ 15, 253 Wis. 2d 38, 644 N.W.2d 891; *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 636, 579 N.W.2d 698 (1998); *State v. Krawczyk,* 2003 WI App 6, ¶ 9, 259 Wis. 2d 843, 657 N.W.2d 77.

¶ 19. When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea "violates fundamental due process." *State v. Van Camp,* 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997). Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact. *Trochinski,* 253 Wis. 2d 38, ¶ 16. We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary. *Id.*

¶ 20. The issue presented in this case does not require us to determine whether Brown's guilty pleas were knowing, intelligent, and voluntary. Our task is to determine whether Brown has raised sufficient concerns about whether his pleas were knowing, intelligent, and voluntary to entitle him to an evidentiary hearing on his motion to withdraw the pleas.

¶ 21. Brown's postconviction motion concerns alleged deficiencies in the plea colloquy. Whether Brown has pointed to deficiencies in the plea colloquy that establish a violation of Wis. Stat. § 971.08 or other mandatory duties at a plea hearing is a question of law we review de novo. *See State v. Brandt,* 226 Wis. 2d 610, 618, 594 N.W.2d 759 (1999). Likewise, whether Brown has sufficiently alleged that he did not know or understand information that should have been provided at the plea hearing is a question of law. *See State v. Bentley,* 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

## III. THE BANGERT REQUIREMENTS FOR A PLEA COLLOQUY

¶ 22. Given the frequency with which violations of Wis. Stat. § 971.08[10] and *Bangert* are alleged, and in light of the inadequate plea colloquy in this case, we take this opportunity to reexamine the legal tenets fundamental to guilty pleas.

---

[10] Wisconsin Stat. § 971.08(1) provides in part:

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

¶ 23. The duties established in Wis. Stat. § 971.08,[11] in *Bangert,* and in subsequent cases are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary. The faithful discharge of these duties is the best way we know for courts to demonstrate the critical importance of pleas in our system of justice and to avoid constitutional problems.[12]

¶ 24. The *Bangert* opinion is a timeless primer on the foundation principles of the plea colloquy. It answers the oft-expressed concern that pleas consume too much valuable court time.

¶ 25. The United States Constitution sets forth the standard that a guilty or no contest plea must be *affirmatively* shown to be knowing, intelligent, and voluntary. *Bangert,* 131 Wis. 2d at 260. If this showing does not appear in the transcript of the plea hearing, there is a high probability that it will have to be shown in a postconviction hearing.

¶ 26. Historical perspective on the required procedure is valuable. In *Bangert* this court confronted the implications of a decision it had made a year earlier. In *State v. Cecchini,* 124 Wis. 2d 200, 368 N.W.2d 830 (1985), the court held unanimously that prior to accepting a plea, a trial court "must ascertain that the defendant understands the nature of the charge, and that this must be done *on the record at the plea*

---

[11] Wis—JI Criminal SM-32 (1995) summarizes the duties a circuit court should complete in accepting a guilty, no contest, or *Alford* plea and prescribes a recommended procedure to ensure no step is omitted. *See North Carolina v. Alford,* 400 U.S. 25 (1970). We strongly encourage courts to follow these plea-acceptance procedures.

[12] "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction." *Boykin v. Alabama,* 395 U.S. 238, 242 (1969).

*hearing." Id.* at 201 (emphasis added). The court added: "Because the trial court failed to do so . . . the plea was involuntary and unknowing and in violation of the defendant's right to due process." *Id.* In short, under *Cecchini,* a deficient plea colloquy was per se a violation of due process and required withdrawal of the defendant's plea.

¶ 27. Then *Bangert* came along. It involved a defendant who had murdered an Eau Claire police officer. Although the defendant had been involved in extensive proceedings and discussions before his plea, his plea colloquy was plainly insufficient to show that he understood the nature of the charge. If *Cecchini* were applied, Bangert could withdraw his plea as a matter of right.

¶ 28. The *Bangert* court reconsidered the *Cecchini* rule and withdrew language from that opinion, but it did not compromise or "discard the *mandatory requirement* that trial judges undertake a personal colloquy with the defendant to ascertain his understanding of the nature of the charge[.]" *Bangert,* 131 Wis. 2d at 260 (emphasis added).

¶ 29. The court held that a plea will not be voluntary unless the defendant has a full understanding of the charges against him. *Id.* at 257 (citing *Brady v. United States,* 397 U.S. 742, 748 n.6 (1970)). In addition, for a plea to function as a valid waiver of constitutional rights, the plea must be an intentional relinquishment of known rights. *Id.* at 265 (citing *McCarthy v. United States,* 394 U.S. 459, 466 (1969); *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). Thus, a plea will not be voluntary unless the defendant understands the nature of the constitutional rights he is waiving. *Bangert,* 131 Wis. 2d at 265.

¶ 30. To ensure a knowing, intelligent, and voluntary plea, *Bangert* also required that a trial judge explore the defendant's capacity to make informed decisions.

¶ 31. In his concurring opinion, Chief Justice Nathan Heffernan stated: "*Cecchini* established that a complete record of a defendant's understanding of a plea be made at the plea hearing. This procedure discourages postconviction attacks." *Id.* at 298 (Heffernan, C.J., concurring). "[A] postconviction cure procedure simply means there will be one or more *evidentiary* hearings on the plea withdrawal issue." *Id.* at 299.

¶ 32. Smarting from this criticism, the majority condemned perfunctory colloquies, facially superficial colloquies, and ritualistic colloquies. "This court cannot overemphasize the importance of the trial court's taking great care in ascertaining the defendant's understanding" of the nature of the charges and the constitutional rights being waived. *Id.* at 266, 270.

¶ 33. To head off postconviction hearings on plea withdrawals, the court said:

> We reiterate that *the duty to comply with the plea hearing procedures falls squarely on the trial judge.* We understand that most trial judges are under considerable calendar constraints, but it is of paramount importance that judges devote the time necessary to ensure that a plea meets the constitutional standard. The plea hearing colloquy must not be reduced to a perfunctory exchange. It demands the trial court's "utmost solicitude."

*Id.* at 278–79 (quoting *Boykin v. Alabama,* 395 U.S. 238, 243–44 (1969)) (emphasis added). "Such solicitude will serve to forestall postconviction motions, which have an even more detrimental effect on a trial court's time

615

limitations than do properly conducted plea hearings."
*Id.* at 279.

¶ 34. To assist circuit courts, the *Bangert* decision outlined a judge's duties at a plea hearing, drawing on Wis. Stat. § 971.08, familiar case law, and Wis JI— Criminal SM-32 (1985), Part V, Waiver of Constitutional Rights. *Bangert,* 131 Wis. 2d at 261–62, 270–71. We take this opportunity to restate and supplement the *Bangert* outline.

¶ 35. During the course of a plea hearing, the court must address the defendant personally and:

> (1) Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;[13]

> (2) Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;[14]

> (3) Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;[15]

> (4) Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;[16]

---

[13] *State v. Bangert,* 131 Wis. 2d 246, 261–62 389 N.W.2d 12 (1986).

[14] *Id.* at 262.

[15] *Id.*

[16] *Id.*

(5) Establish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea;[17]

(6) Ascertain personally whether a factual basis exists to support the plea;[18]

(7) Inform the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights;[19]

(8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;[20]

(9) Notify the defendant of the direct consequences of his plea;[21] and

(10) Advise the defendant that "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law," as provided in Wis. Stat. § 971.08(1)(c).[22]

---

[17] *Id.;* Wis. Stat. § 971.08(1)(a).

[18] *Id.;* Wis. Stat. § 971.08(1)(b).

[19] *State v. Hampton,* 2004 WI 107, ¶ 24, 274 Wis. 2d 379, 683 N.W.2d 14; *Bangert,* 131 Wis. 2d at 270–72.

[20] *Hampton,* 274 Wis. 2d 379, ¶¶ 20, 69; *State ex rel. White v. Gray,* 57 Wis. 2d 17, 24, 203 N.W.2d 638 (1973).

[21] *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 636, 579 N.W.2d 698 (1998). The most contemporary interpretation of this requirement is catalogued in Wis JI—Criminal SM-32.

[22] *See State v. Douangmala,* 2002 WI 62, ¶ 19, 253 Wis. 2d 173, 646 N.W.2d 1.

¶ 36. A circuit court's failure to fulfill a duty at the plea hearing will necessitate an evidentiary hearing if a defendant's postconviction motion alleges he did not understand an aspect of the plea because of the omission. As *Bangert* put it: "Whenever the sec. 971.08 procedure is not undertaken or whenever the court-mandated duties are not fulfilled at the plea hearing, the defendant may move to withdraw his plea." *Bangert,* 131 Wis. 2d at 274. Assuming the defendant's postconviction motion is adequate to require a hearing, he may withdraw his plea after sentencing as a matter of right unless the state can show the plea was entered knowingly, intelligently, and voluntarily, despite the deficiencies in the plea hearing. *Trochinski,* 253 Wis. 2d 38, ¶ 17; *Van Camp,* 213 Wis. 2d at 139.

¶ 37. If a defendant does not understand the nature of the charge and the implications of the plea, he should not be entering the plea, and the court should not be accepting the plea. On the other hand, if a defendant does understand the charge and the effects of his plea, he should not be permitted to game the system by taking advantage of judicial mistakes.

---

The court is also required by Wis. Stat. § 971.08(1)(d) to inquire of the district attorney whether he or she has complied with Wis. Stat. § 971.095(2) concerning consultation with victims.

Wisconsin Stat. § 971.08 is modeled on the 1970 version of Federal Rule of Criminal Procedure 11. *Bangert,* 131 Wis. 2d at 260–61. Since that time, Rule 11 has been significantly amended to impose a greater number of duties upon federal district court judges before accepting a guilty or no contest plea. Many of the accretions to Rule 11 are tracked in Wisconsin case law and amendments to Wis JI—Criminal SM-32.

¶ 38. Under our rules, a defendant can wait until he knows his sentence before he moves to withdraw his plea, and he may not be disadvantaged by this delay as long as he is able to point to a deficiency in the plea colloquy. Thus, only the court, with the assistance of the district attorney, can prevent potential sandbagging by a defendant by engaging the defendant at the plea colloquy and making a complete record. *See Bangert,* 131 Wis. 2d at 275.

¶ 39. After sentencing, in cases that involve an alleged deficiency in the plea colloquy, an attempt to withdraw a guilty plea proceeds as follows. The defendant must file a postconviction motion under Wis. Stat. § 809.30 or other appropriate statute. The motion must (1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing. *Bangert,* 131 Wis. 2d at 274.

¶ 40. When a *Bangert* motion is filed, it is reviewed by the court. If the motion establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations, the court must hold a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy.[23]

---

[23] There will be no need for an evidentiary hearing if the court grants the defendant's motion to withdraw his plea. Of

*Bangert,* 131 Wis. 2d at 274. When the defendant has met his two burdens, the burden of producing persuasive evidence at the evidentiary hearing shifts to the state.[24] *Id.* at 275. In meeting its burden, the state may rely "on the totality of the evidence, much of which will be found outside the plea hearing record." *Hampton,* 274 Wis. 2d 379, ¶ 47. For example, the state may present the testimony of the defendant and defense counsel to establish the defendant's understanding. *Bangert,* 131 Wis. 2d at 275. The state may also utilize the plea questionnaire and waiver of rights form, documentary evidence, recorded statements, and transcripts of prior hearings to satisfy its burden.

¶ 41. If the state is able to meet its burden, the hearing should be over. In a theoretical sense, the burden will have shifted back to the defendant, but there is nothing for the defendant to prove because the defendant is not entitled to turn a *Bangert* hearing into a fishing expedition on other issues that were not pleaded in the defendant's original motion.

¶ 42. When the defendant files a dual purpose motion—that is, a *Bangert* motion combined with a motion that alleges ineffective assistance of counsel or some other problem affecting the plea that is extrinsic to the plea hearing record—the court should make an

course, the objective of a complete plea colloquy, beyond assuring that a defendant's plea is knowing, intelligent, and voluntary, is to minimize the necessity of a postconviction evidentiary hearing on the plea.

[24] As we explained in *Bangert,* 131 Wis. 2d at 275, part of the reason the burden shifts from the defendant to the state is that this burden-shifting "will encourage the prosecution to assist the trial court in meeting its sec. 971.08 and other expressed obligations."

initial ruling on whether an evidentiary hearing is required and, if it is, what the hearing will address. It must be remembered that when the defendant makes the type of motion discussed in *Bentley,* which requires testimony or the examination of evidence outside the existing record, the defendant is entitled to an evidentiary hearing only if his postconviction motion alleges facts that, if true, would entitle him to relief. *Id.* at 310. "To ask the court to examine facts outside the record in an evidentiary hearing requires a particularized motion with sufficient supporting facts to warrant the undertaking." *Hampton,* 274 Wis. 2d 379, ¶ 61. In addition, the defendant maintains the burden of proof in a *Bentley*-type hearing and the facts adduced must show manifest injustice by clear and convincing evidence before the defendant may withdraw his plea. *Bentley,* 201 Wis. 2d at 311.

## IV. BROWN'S MOTION

¶ 43. This case concerns whether Brown's postconviction motion was sufficient to require an evidentiary hearing because of alleged deficiencies in the plea colloquy. Accordingly, we must determine (1) whether Brown has made a prima facie showing that Wis. Stat. § 971.08(1) or other court-mandated duties were not followed, and (2) whether he adequately alleged that he did not understand information that should have been provided at the plea hearing.

¶ 44. Brown contends the circuit court failed to conform to its plea-taking duties in three respects. First, the circuit court did not establish that Brown understood the nature of the charges to which he pleaded guilty. Second, the circuit court did not adequately inform Brown of the constitutional rights he waived by pleading guilty. Third, the circuit court did

not adequately explain the range of punishments associated with each charge. We will address each of Brown's challenges to the plea colloquy.

A. The Nature of the Charges

¶ 45. Brown argues he made a prima facie showing that he did not understand the nature of the charges based on the fact that the plea hearing lacked any discussion of the elements of the offenses to which he pleaded guilty. The State responds that the circuit court established Brown's understanding of the charges at the plea hearing in other ways. Both parties rely upon *Bangert*.

¶ 46. In *Bangert* we said a circuit court may establish the defendant's understanding of the charges to which he is pleading by any one of, or combination of, the following non-exhaustive methods. "First, the trial court may summarize the elements of the crime charged by reading from the appropriate jury instructions, *see* Wis. JI—Criminal SM-32, Part IV [1995], or from the applicable statute." *Bangert*, 131 Wis. 2d at 268.

¶ 47. "Second, the trial judge may ask defendant's counsel whether he explained the nature of the charge to the defendant *and request him to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing.*" *Id.* (emphasis added).

¶ 48. "Third, the trial judge may expressly refer to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea

hearing." *Id.* "For example, when a criminal complaint has been read to the defendant at a preliminary hearing, the trial judge may inquire whether the defendant understands the nature of the charge based on that reading." *Id.* "A trial judge may also specifically refer to and summarize any signed statement of the defendant which might demonstrate that the defendant has notice of the nature of the charge." *Id.*

¶ 49. The State emphasizes that the *Bangert* list is non-exhaustive, and we agree. There may be other ways to show a defendant's understanding of the charges.

¶ 50. In this case, the State notes: (1) Brown's defense attorney stated he had reviewed the elements with Brown; (2) Brown confirmed that his attorney reviewed with him the elements of the charges; and (3) Brown said he understood the charges.

¶ 51. These representations are not sufficient to establish that Brown's plea was knowing, intelligent, and voluntary. The State concedes that where an illiterate defendant is involved, the better practice is to use one of the three methods expressly stated in *Bangert* to establish that the defendant understood the nature of the charges.

¶ 52. Complying with the requisite standards is not optional. *Bangert* requires that the plea colloquy establish the defendant's understanding of the nature of the charges, the range of penalties, the constitutional rights being waived, and other essential information *on the record.* We observed in *Bangert* that the method a circuit court employs to ascertain a defendant's understanding should depend upon "the circumstances of the

particular case, including the level of education of the defendant and the complexity of the charge[s]." *Bangert,* 131 Wis. 2d at 267–68. The less a defendant's intellectual capacity and education, the more a court should do to ensure the defendant knows and understands the essential elements of the charges.

¶ 53. In the present case, the circuit court did not follow any of the methods established in *Bangert.* The circuit court never enumerated, explained, or discussed the elements of first-degree sexual assault, armed robbery, or kidnapping, or the facts making up the elements. Although Brown's attorney stated that he had explained the nature of the charges to Brown, the circuit court never asked either Brown or his attorney to summarize the extent of the explanation or the elements of the crimes on the record. The circuit court never referred to the record from prior court proceedings to establish that Brown understood the nature of the charges.[25] The circuit court never referred to or summarized the charges as found in a plea questionnaire or other writing signed by Brown, because there were no such documents.

¶ 54. The fact that there was no plea questionnaire at hand should have warned the court that special steps were imperative to ensure, on the record, that the defendant was fully apprised and understood the charges, the potential penalties, and the panoply of valuable rights he was surrendering by entering his plea. The absence of the plea questionnaire and waiver of rights form prevented the court from using these documents to instruct the defendant, to assess the defendant's understanding, or to construct an invulner-

---

[25] Indeed, the circuit court could not have done so because the record is silent in that respect.

able record. The absence of these documents will now hamper the State at the evidentiary hearing.

¶ 55. An examination of the record illustrates why the court's failure to enumerate or discuss elements of the crimes may have shortchanged the defendant. Brown pleaded guilty to all charges as a party to the crime without the circuit court ever explaining or ensuring that the defendant understood the concept of party to a crime. This could be significant for four reasons. First, at the plea hearing Brown's attorney said that Brown denied that he personally held or pointed a gun in Booth's hotel room. Second, at the sentencing hearing, Brown's attorney repeated Brown's denial that he had intercourse with Booth's girlfriend. Third, the court never referenced "party to a crime" when it mentioned the sexual assault charge. Fourth, Attorney Earle acknowledged, "perhaps I didn't prepare him as well for his plea as I should have . . . perhaps we should have tendered a no contest plea with regard to the sexual assault." These statements and omissions raise questions of whether Brown understood the concept of party to a crime, an essential element of the charges to which he pleaded guilty.

¶ 56. The admission by Brown's original attorney that he may not have fully prepared Brown to plead guilty to the sexual assault charge also helps to explain why a court cannot rely very heavily upon mere statements from defense counsel that he or she has reviewed the nature of the charges with a defendant. *Bangert* requires verification, independent of defense counsel's assertion, that a defendant understands the nature of the charges. *See Bangert,* 131 Wis. 2d at 267 (requiring the circuit court to "ascertain that the defendant possesses accurate information about the nature of the charge"). Hence, *Bangert* requires a circuit court to

625

summarize the elements of the offenses on the record, or ask defense counsel to summarize the elements of the offenses, or refer to a prior court proceeding at which the elements were reviewed, or refer to a document signed by the defendant that includes the elements.[26] *Id.* at 268. Each method enables a court to ascertain the accuracy of the defendant's knowledge; each method gives substantive content to a defendant's understanding. *Cf. id.* at 269 ("Understanding must have knowledge as its antecedent; knowledge, like understanding, cannot be inferred or assumed on a silent record."). Moreover, we encourage circuit court judges to translate legal generalities into factual specifics when necessary to ensure the defendant's understanding of the charges.

¶ 57. Unfortunately, the record in this case is bereft of what Brown knew and understood about the charges to which he pleaded guilty. Although Brown's attorney stated he reviewed the charges with Brown, we do not know whether he accurately described and discussed all the elements because that is not on the record. In view of Brown's illiteracy, his one-word responses, the complexity of the charges, and the absence of a plea questionnaire, Brown's one-word acknowledgment that he reviewed the elements with his attorney and understood them is conclusory, not persuasive.

---

[26] We recognize that the United States Constitution is satisfied by defense counsel's representation that he or she has reviewed the elements of each charge with the defendant, and the defendant's acknowledgement that the elements were indeed reviewed by counsel. *Bradshaw v. Stumpf,* 545 U.S. 175, 192 (2005). Since *Bangert,* however, we have interpreted Wis. Stat. § 971.08 to require a court to obtain more direct confirmation of a defendant's understanding before accepting a plea.

¶ 58. We conclude Brown's postconviction motion alleges a prima facie violation of Wis. Stat. § 971.08. Although a circuit court must establish that a defendant understands every element of the charges to which he pleads, the circuit court is not expected to explain every element of every charge in every case. This opinion is intended to revitalize *Bangert,* which allows a court to tailor a plea colloquy to the individual defendant.[27] In customizing a plea colloquy, however, a circuit court must "do more than merely record the defendant's affirmation of understanding." *Bangert,* 131 Wis. 2d at 267. As we stated in *Bangert:*

> [I]t is no longer sufficient for a trial judge merely to perfunctorily question the defendant about his understanding of the charge. Likewise, a perfunctory affirmative response by the defendant that he understands the nature of the offense, without an *affirmative showing* that the nature of the crime has been communicated to him or that the defendant has at some point expressed his knowledge of the nature of the charge, will not satisfy the requirement of sec. 971.08, Stats.

---

[27] The need to expand the colloquy in certain cases is echoed by the American Bar Association, which states, "where a court is uncertain about the defendant's understanding, perhaps because of the defendant's lack of education or low intelligence, it may be advisable to ask the defendant to explain in his or her own words what several of the rights mean." III American Bar Association, *Standards for Criminal Justice,* § 14–1.4 at 14.28 (2d ed. 1980). Although this section pertains to establishing a defendant's understanding of what constitutional rights are waived by a guilty plea, the footnote to this sentence demonstrates it applies with equal force to establishing a defendant's understanding of the nature of the charges.

*Bangert,* 131 Wis. 2d at 268–69 (emphasis added). A statement from defense counsel that he has reviewed the elements of the charge, without some summary of the elements or detailed description of the conversation, cannot constitute an "affirmative showing that the nature of the crime has been communicated." *Id.* at 268.

¶ 59. To earn a *Bangert* evidentiary hearing, a defendant must satisfy a second obligation. In addition to making a prima facie case that the circuit court erred in the plea colloquy, a defendant must allege he did not enter a knowing, intelligent, and voluntary plea *because* he did not know or understand information that should have been provided at the plea hearing. *Bangert,* 131 Wis. 2d at 274. Accordingly, we turn to the question whether Brown's postconviction motion sufficiently alleged that he did not understand the nature of the charges to which he pleaded guilty.

¶ 60. The State contends Brown failed to adequately allege that he did not understand the nature of the charges. The State argues Brown's motion to withdraw his guilty pleas was insufficient because it failed to specifically state what Brown did not understand.

¶ 61. Brown's motion reads in part as follows:

> The guilty plea record fails to demonstrate that Mr. Brown actually *understood* the elements of any of the crimes to which he pled guilty. The guilty plea record also fails to demonstrate that Mr. Brown actually *understood* the valuable constitutional rights he was waiving.
>
> . . . .
>
> Illustration of the second part of defendant's burden, that Mr. Brown "did not know or understand the information which should have been provided at the

plea hearing" is (only a bit) more problematic. Undersigned counsel considered, but rejected, having Mr. Brown execute an affidavit to this effect. An affidavit would suffer from the same flaw as the (never executed) Plea Questionnaire—to wit, what use is an affidavit executed by an illiterate defendant?

Counsel also considered submitting his own affidavit. This suffers from a different flaw, placing counsel in the untenable dual role of advocate and witness. Suffice it to say that counsel has discussed the issues raised herein and represents that Mr. Brown *appears to understand very little of what transpired in connection with the entry of his guilty pleas. His testimony will make this clear beyond dispute.* (Emphasis added.)

¶ 62. We share the State's concern that this motion does not allege directly that the defendant did not know or understand certain information that should have been provided or addressed at the plea hearing. A defendant is not required to submit a sworn affidavit to the court, but he is required to plead in his motion that he did not know or understand some aspect of his plea that is related to a deficiency in the plea colloquy.

¶ 63. This requirement is necessary for at least three reasons. First, if the defendant is unwilling or unable to assert a lack of understanding about some aspect of the plea process, there is no point in holding a hearing. The ultimate issue to be decided at the hearing is whether the defendant's plea was knowing, intelligent, and voluntary, not whether the circuit court erred. The court's error has already been exposed. In the absence of a claim by the defendant that he lacked understanding with regard to the plea, any shortcoming in the plea colloquy is harmless.

¶ 64. Second, if the defendant alleges that he did not understand some aspect of the plea colloquy (such as the nature of the charges) but the transcript shows that the court's treatment of the subject was unassailable, the defendant's motion for a hearing cannot be granted on the basis of a deficiency in the transcript. On that score, the defendant's motion will have failed to make a prima facie showing that the plea colloquy was deficient. Strictly speaking, a *Bangert* motion relies on information *in the record*. When a defendant moves to withdraw a plea based on information outside the record, the defendant has a higher burden and must meet the standards set out in *Bentley*, 201 Wis. 2d at 318.

¶ 65. Third, when a *Bangert*-type motion is granted, the state should know from the pleading what it is required to prove at the evidentiary hearing. A *Bangert* evidentiary hearing is not a search for error; it is designed to evaluate the effect of known error on the defendant's plea so that the court can determine whether it must accept the withdrawal of the defendant's plea. The state must be given fair notice of what it must prove.

¶ 66. In this case, defense counsel persuasively documented deficiencies in the plea hearing transcript, but the motion did not allege directly that the defendant did not understand the nature of the charges against him. Counsel explained his decision not to submit an affidavit from the defendant or himself, but he did not explain why the defendant could not plead that he did not understand the nature of the charges. We are required to infer such an allegation from the totality of the motion. In this case, we accept counsel's representations that the defendant lacked understand-

630

ing about the charges and that the defendant's "testimony will make this clear beyond dispute."

¶ 67. In the ordinary case, defense counsel should plead with greater particularity a defendant's lack of understanding. A defendant must identify deficiencies in the plea colloquy, state what he did not understand, and connect his lack of understanding to the deficiencies. *See Hampton,* 274 Wis. 2d 379, ¶ 57; *State v. Giebel,* 198 Wis. 2d 207, 217, 541 N.W.2d 815 (Ct. App. 1995). This procedure should prove fair to both parties.

¶ 68. Because this case is being remanded to the circuit court for a hearing, we will respond to the defendant's two other attacks on the plea colloquy.

B. Waiver of Constitutional Rights

¶ 69. Brown alleges that the colloquy was insufficient with respect to the waiver of constitutional rights.

¶ 70. The Plea Questionnaire/Waiver of Rights form lists seven statements of constitutional rights that a defendant agrees to give up by entering a plea. The form reads as follows:

1. I give up my right to a trial.

2. I give up my right to remain silent and I understand that my silence could not be used against me at trial.

3. I give up my right to testify and present evidence at trial.

4. I give up my right to use subpoenas to require witnesses to come to court and testify for me at trial.

5. I give up my right to a jury trial, where all 12 jurors would have to agree that I am either guilty or not guilty.[28]

6. I give up my right to confront in court the people who testify against me and cross-examine them.

7. I give up my right to make the State prove me guilty beyond a reasonable doubt.

¶ 71. The circuit court paraphrased these statements, asking the defendant if he was giving up each right. Six times the defendant answered "yeah;" one time the defendant answered "yes."

¶ 72. The circuit court was told earlier in the hearing that defense counsel had gone over the content of the plea questionnaire on two occasions. "I've gone over every word," counsel declared.

¶ 73. Brown contends the court "never engaged Brown in any *discussion* concerning the several constitutional rights waived by the plea." On these facts, he has a point. The transcript reveals no representation by Brown's attorney that he ever had a quality discussion with Brown about the meaning or value of the defendant's constitutional rights. The court itself never probed the subject or elicited more than perfunctory one-word answers to its questions.

¶ 74. This aspect of the colloquy contrasts dramatically with a court commissioner's colloquy with Brown when he waived a preliminary examination:

The Court: You're waiving your right to a preliminary hearing. Do you know what that is?

---

[28] This statement does not take into account the possibility of a hung jury. We respectfully suggest that the Judicial Conference Forms Committee review the wording of this point.

The Defendant: Yeah.

The Court: Tell me what it is, please.

The Defendant: To get my next court date.

The Court: Wrong. Try again. What is a preliminary hearing? What are you waiving? I've got to know that you know what you're waiving.

The Defendant: Oh, well, what we discussed?

Mr. Earle: Yes.

The Court: What is a preliminary hearing?

The Defendant: What we discussed, about what happened.

The Court: Well, that doesn't help. I know that you understand. Let me define what I think a preliminary hearing is, and you tell me if you agree with it. Okay?

The Defendant: Yes.

The Court: All right. At a preliminary hearing the State must establish by evidence two things: Number 1, that a felony occurred in Milwaukee County, a serious crime. Number 2, that you were probably responsible for it. It's a preview of the State's case. Is this what you want to waive? Hello?

The Defendant: Yes?

The Court: Is that what you want to waive?

The Defendant: Yes.

¶ 75. The commissioner's colloquy is more in keeping with our expectation of what a court should do when it is dealing with a poorly educated defendant

than the circuit court's colloquy. The commissioner was not satisfied with one-word answers.

¶ 76. On the facts of this case, where the defendant was illiterate, where there was no waiver of rights form, and where there was no rendition by Brown's attorney of a meaningful discussion of the defendant's rights, the court should have done more to show that the defendant understood the rights he was giving up by entering a plea.

¶ 77. Probing questions may not always be necessary, but they help to ensure a defendant's understanding and they help to complete the hearing record. Upon remand, the State, which remained silent in the face of an inadequate colloquy, will be required to show that the defendant made a knowing, intelligent, and voluntary waiver of his constitutional rights.

C. Maximum Potential Sentence

¶ 78. Brown also claims that the circuit court violated Wis. Stat. § 971.08(1) by failing to state that the punishment for each charge could run consecutively. The circuit court stated that each charge was a Class B felony and that it could impose a 60–year sentence for each charge. We find it difficult to accept Brown's suggestion that failure to inform a defendant who is facing multiple charges that the sentence imposed on each charge could be consecutive (that is, the total sentence could add up to more than 60 years), would render a defendant's plea not knowing, intelligent, and voluntary. The reasonable conclusion when a defendant is confronted with multiple charges is that the defendant could face multiple punishments. That realization is a major explanation for plea bargains that

reduce the number of charges. Although the better practice is to advise a defendant of the cumulative maximum sentence he could receive from consecutive sentences, we do not believe the omission of such information should allow a defendant to withdraw a guilty plea in the absence of any allegation that the defendant did not understand the effect of multiple charges on his sentence. Failure to understand this simple concept would signal more serious problems with the plea. Even if we found error in the omission, it would be harmless on these facts because Brown's total sentence did not reach the maximum on even one of the Class B felonies.

## V. CONCLUSION

¶ 79. Brown's postconviction motion makes a prima facie showing that the circuit court did not comply with Wis. Stat. § 971.08 and *Bangert* in conducting the plea colloquy. The circuit court did not satisfactorily enumerate, explain, or discuss the facts or elements of the three felonies in a manner that would establish for a reviewing court that Brown understood the nature of the charges to which he pleaded guilty. We further conclude Brown adequately alleged that he did not understand the nature of the charges to which he pleaded guilty. Finally, we conclude that there were shortcomings with respect to Brown's waiver of constitutional rights. Accordingly, the court of appeals decision is reversed and the case is remanded for an evidentiary hearing at which the State will have an opportunity to present evidence that Brown understood the nature of the charges to which he pleaded guilty and the constitutional rights he gave up, despite the deficiencies in the plea hearing.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.