COURT OF APPEALS
DECISION
DATED AND FILED

March 14, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1945**

Cir. Ct. No.  2021TP27

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO E. B.-H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

N. H.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: ELLEN R. BROSTROM and JOSEPH R. WALL, Judges. *Affirmed in part; reversed in part and cause remanded with directions*.

¶1 WHITE, J.[1] Nico appeals the order terminating his parental rights to his son, Everett, and the order denying postdisposition relief.[2] Nico argues that his no contest plea to the grounds for the termination of parental rights (TPR) petition was not knowing, intelligent, and voluntary because the circuit court set forth the wrong standard of law for the dispositional phase during his plea colloquy. We conclude that Nico's postdisposition motion set forth a prima facie case for plea withdrawal; accordingly, we reverse the order denying the postdisposition motion. We remand with directions for the circuit court to determine whether the State can prove his plea was nonetheless entered knowingly intelligently, and voluntarily.

¶2 Additionally, Nico argues that the circuit court's analysis of Everett's wishes in its consideration of the statutory factors in the dispositional phase of the TPR proceeding was an erroneous exercise of discretion. We conclude that circuit court acted within its discretion in its considerations during the dispositional phase. Therefore, we affirm the order terminating Nico's parental rights.

## BACKGROUND

¶3 Everett was born prematurely in April 2019, and placed in the Pediatric Intensive Care Unit (PICU). During his intensive care treatment, it was determined he had cocaine, marijuana, and opiates in his system. At discharge

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reference and to protect the confidentiality of the proceedings, pseudonyms will be used to refer to the father and son. *See* WIS. STAT. RULE 809.86.

from the hospital in May 2019, the Division of Milwaukee Child Protective Services (DMCPS) took temporary physical custody of Everett, and an order for temporary physical custody was entered by the circuit court.[3] Everett was placed with a foster family, where he has remained through the pendency of the TPR action.

¶4 The State filed the petition to terminate Nico's parental rights to Everett in January 2021. The petition alleged that there were two grounds for the TPR: Everett remained a child in continuing need of protection or services (CHIPS) pursuant to WIS. STAT. § 48.415(2); and that Nico failed to assume parental responsibilities for Everett pursuant to § 48.415(6).[4] At a hearing in March 2021 after personal service and legal representation were established, the circuit court explained the two phases of a TPR action: the grounds and the disposition. The court noted that a difference between the two phases was that there was no right to a jury trial in the dispositional phase. Further, the court stated that in the dispositional phase, "[a]ll those same trial rights would rise up again, so the State would have to prove by clear, convincing, and satisfactory evidence that it is in [Everett's] best interest that I terminate your rights."

¶5 On February 1, 2022, Nico decided to enter a no contest plea to the failure to assume parental responsibility ground and the State dismissed the

---

[3] The Honorable Ellen R. Brostrom presided over the TPR proceedings and entered the order terminating Nico's parental rights. Multiple judges were involved in the proceedings prior to the TPR petition and we refer to all of them as the circuit court, unless otherwise noted.

[4] The State also petitioned to terminate Everett's biological mother's rights on the same grounds. Everett's mother separately appealed her case, this court affirmed the TPR, and therefore, her parental rights are not at issue in this appeal. *See State v. E.B.*, No. 2022AP1882, unpublished slip op. (WI App Jan. 18, 2023). This decision focuses on the facts and the proceedings as they relate to Nico.

continuing CHIPS ground. We recite sections of the circuit court's colloquy with Nico, focusing on the contested issues.

> THE COURT: You have an absolute right to a trial, either to just me, the judge, or to a jury. Do you understand that?
>
> [NICO:] Yes, I do understand.
>
> ….
>
> THE COURT: And it would be the State's burden to prove the grounds by clear, convincing, and satisfactory evidence to a reasonable certainty. Do you understand that?
>
> [NICO:] Yes, I do understand.
>
> THE COURT: And the State would try to do that by calling witnesses to the stand, who would testify under oath, and you would have the right to cross-examine them…. You would also have the right to introduce your own evidence and to use subpoenas to require witnesses to come to court and testify for you…. You would also have the right to testify, or you could remain silent, but silence can be used against you because this is not a criminal case. Are you aware of that as well?
>
> [NICO:] Yes, I understand that.
>
> ….
>
> THE COURT: Now, that does not mean that you're giving up your right to have a trial about whether or not it's in [Everett's] best interest that the Court actually terminate your parental rights. Do you understand that as well?
>
> [NICO:] Yes, I do understand.
>
> ….
>
> THE COURT: And at that—that's what we call disposition—I'm going to have to decide either, yes, it's in [Everett's] best interest to terminate your rights and grant the State's petition, or no, it is not, and then I would dismiss the State's petition. Does that make sense?
>
> [NICO:] Yes.

¶6      The circuit court then accepted Nico's no contest plea as being knowing, intelligent, and voluntary on the ground of failure to assume parental responsibility.  The court conducted a similar colloquy with Everett's mother, but then returned to Nico to confirm that he understood that "at the contested disposition hearing, there's no right to a jury; you have all those same trial rights, but it's always just a trial to the judge."  Nico confirmed he understood.

¶7      The case proceeded to the State's "prove up" of the ground for the TPR and the dispositional phase of the proceedings, both of which occurred on June 6, 2022.  During the prove up section of the hearing, the case manager testified that Nico had supervised weekly visitation with Everett during his three years in out-of-home care, with an average of about four hours a week.  During visitation, the parents generally relied on the caregiver's provisions of "food and diapers and wipes."  Nico was not involved in Everett's medical care, although he did attend a dental appointment in October 2021.  He did not provide financial support.  The circuit court concluded that the State provided "clear, convincing, and satisfactory evidence to a reasonable certainty of the failure to assume ground for each of the parents."

¶8      The case then turned to the dispositional phase of the TPR proceedings.  The court heard testimony from Everett's foster mother, the case manager, Nico, Nico's psychotherapist, and Everett's mother.  Here we note that Nico's argument is confined to the child's wishes factor of the disposition, and we focus our recitation to those facts relevant to that issue.

¶9      Everett's foster mother testified that she had cared for Everett since he left the PICU shortly after his birth in 2019, or approximately three years.  She and her husband were interested in adopting Everett.  Everett calls her "Mama"

and her husband "Daddy" and he is a full member of their family and extended family.

¶10   The case manager returned to the witness stand. She testified that Everett would turn to his foster mother for comfort and a hug or kiss when his rambunctious behavior resulted in an "owie." She testified that Everett appeared bonded to the foster family and called them "mama" and "daddy." She testified that Everett has "struggled" with supervised visitation at times: "He doesn't always want to go"; "he has fun when he goes"; but he does not have a "father/son relationship" with Nico. While the case manager acknowledged Everett was too young to express his wishes about the TPR proceeding, the foster home is the only home he has ever lived in and he views their house as his home. He states that things in the house are "mine"; he moves freely and comfortably in the house; and he calls his bedroom, "My room."

¶11   Nico testified on his own behalf. He explained that he and Everett's mother moved in together when she found out she was pregnant and he was at the hospital for the birth. He was unaware that Everett's mother had a severe drug addiction until Everett tested positive for substances at the hospital. He testified that he regularly attended visitation, during which he fed Everett, changed his diapers, and played on the floor with him. Further, Nico helped teach Everett how to use the bathroom and Everett called him, "Dad."

¶12   After closing arguments by the State, the guardian *ad litem* (GAL), and the parents' attorneys, the court summarized its thoughts on the case and its considerations of the statutory factors. It reiterated that it was looking at the case through Everett's eyes, and its "standard today is what's in [Everett's] best interest. And from [Everett's] perspective the [foster family is] his family. He has

been with them since he was released from the hospital. He has gone through some really hard time" including withdrawal from drugs. The foster family was there "to rock him, to feed him, to change him, to soothe him." Again, the court considered Everett's perspective, stating, "he can't tell me what he wants, but I—I'm sure that he wants to stay where he is. He's bonded with the [foster family]; he's bonded with the other kids in that home."

¶13     The court expressed uncertainty whether Everett had a substantial relationship with any biological family members. The court stated it believed that the foster family would "mitigate any harm severing those relationships will cause because they've already demonstrated" this by maintaining contact with the biological family of their three older adopted children. The court considered it "very likely" that Everett "be adopted post-termination" by his foster parents, who were "licensed, committed, ready, willing, and able." Everett's "age and health are no barrier to adoption." The court considered that Everett has been separated from his parents "his whole life" and he "deserves stability." The court stated that Everett "deserves to stay, really in the only family and home that he knows." The court concluded that "all the statutory factors indicate it's in [Everett's] best interest to terminate your parental rights." The circuit court signed the order terminating Nico's parental rights on June 7, 2022.

¶14     Nico filed a postdisposition motion on December 29, 2022, requesting an evidentiary hearing on his claim that his plea was not knowing, intelligent, or voluntary; therefore, he moved for plea withdrawal.

The postdisposition court held a hearing on the motion on January 30, 2023.[5]  The court stated, "I've always felt that there was no burden of proof or standard of proof at a dispositional hearing: that it was simply best interests and the parties would both present; nobody had the burden."  The postdisposition court reviewed the transcripts from several hearings before the circuit court and heard oral argument from the parties; however, there was no testimonial presentation of evidence or witnesses.

¶15    The postdisposition court concluded that while the circuit court incorrectly explained the burden of proof for the disposition during the initial appearance, which occurred ten months before the no contest plea, it did not "put any weight in the [c]ourt's error…"  The postdisposition court reviewed that during the plea hearing, the circuit court correctly explained Nico's rights and the burden of proof for the grounds phase and twice expressed the best interests standard for the disposition.  The postdisposition court concluded that Nico failed to make a prima facie showing that his no contest plea was not knowing, intelligent and voluntary.  It denied Nico's postdisposition motion for plea withdrawal.

¶16    Nico appeals both the order denying his postdisposition motion and the order terminating his parental rights.

---

[5] The Honorable Joseph Wall presided over Nico's postdisposition hearing and entered the order denying his motion for postdisposition relief.  We refer to Judge Wall as the postdisposition court.

**DISCUSSION**

¶17     On appeal, first, Nico renews his argument from his postdisposition motion that during the plea colloquy, the circuit court failed to properly explain the statutory standard it would apply in the dispositional phase. Nico contends that the postdisposition court erred when it denied his postdisposition motion without an evidentiary hearing. We conclude that Nico is entitled to an evidentiary hearing on this claim. Second, Nico contends that the circuit court erroneously exercised its discretion in its analysis of the "child's wishes" factor when it considered the best interests of the child in the dispositional phase. We conclude that the court acted within its discretion when it granted the TPR petition and that its considerations of Everett's wishes were not erroneous.

I.     *Plea withdrawal*

¶18     A plea in a termination of parental rights case must be entered knowingly, voluntarily, and intelligently. *Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶24, 293 Wis. 2d 530, 716 N.W.2d 845. "Wisconsin law requires the circuit court to undertake a personal colloquy with the defendant in accordance with WIS. STAT. § 48.422(7)." *Jodie W.*, 293 Wis. 2d 530, ¶25. Within that colloquy, the circuit court must "at the very least … inform the parent that at the second step of the process, the court will hear evidence related to the disposition and then will either terminate the parent's rights or dismiss the petition if the evidence does not warrant termination." *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶16, 314 Wis. 2d 493, 762 N.W.2d 122. For that explanation to be "meaningful to the parent, the parent must be informed of the statutory standard the court will apply at the second stage." *Id.* The statutory standard for the dispositional phase is the best interests of the child, which "shall be the prevailing

factor" in determining the disposition of a TPR petition. *See* WIS. STAT. § 48.426(2).

¶19    When a parent alleges that a plea was not knowingly, intelligently and voluntarily entered, we use the analysis set forth in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). *See Therese S.*, 314 Wis. 2d 493, ¶6. Under *Bangert*, a post-disposition motion "must make a prima facie showing that the circuit court violated its mandatory duties and must allege the parent did not know or understand the information that should have been provided at the hearing." *Therese S.*, 314 Wis. 2d 493, ¶6; *State v. Brown*, 2006 WI 100, ¶39, 293 Wis. 2d 594, 716 N.W.2d 906. If a motion establishes a prima facie violation of a court mandated duty and makes the requisite allegations, "the court must hold a postconviction evidentiary hearing," during which the burden shifts to the State "to show by clear and convincing evidence that the ... plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea." *Id.*, ¶40.

¶20    Whether a parent has presented a prima facie case by pointing to deficiencies in the plea colloquy and has sufficiently alleged that he or she did not know or understand information that should have been provided is a question of law that we review independently. *Therese S.*, 314 Wis. 2d 493, ¶7.

¶21    In Nico's postdisposition motion, he asserted that the circuit court misstated the statutory standard during the plea colloquy.[6]  The record reflects that this misstatement occurred when the court pronounced that there was "no right to a jury trial in the second half, it's just to me, the judge.  All those same trial rights would rise up again, the State would have to prove by clear, convincing, and satisfactory evidence that it is in [Everett's] best interest that I terminate your rights."  Further, the circuit court reiterated this point when it confirmed with Nico that he understood that in the second phase he would "have all those same trial rights, but it's always just a trial to the judge."  Nico argues that the circuit court associated the "trial rights" with the State's burden of proof.  As the postdisposition court points out, the circuit court also referenced the best interests standard twice during the plea hearing.  Nonetheless, we conclude that Nico's allegations satisfied the first prong of a ***Bangert*** motion—a prima facie showing of a violation of statutory duties for plea withdrawal.  *See **Brown***, 293 Wis. 2d 594, ¶39.

---

[6] We note that recent unpublished TPR cases have discussed the issue of misstatement of the standard of law or burden of proof in the dispositional phase.   In *State v. T.A.D.S.*, No 2018AP1873, unpublished slip op. (WI App June 18, 2019), the circuit court misstated the burden, assigning a burden to the State at disposition—however, that court also told the parent that best interests was the prevailing factor.  This court concluded that the misstatement was irrelevant in the context of the entire record because the importance of the best interests factor was explained to the parent.  In contrast, in *State v. A.G.,* No. 2021AP1476, unpublished slip op. (WI App Feb. 15, 2022), the circuit court misstated the burden and this court remanded for an evidentiary hearing on the parent's prima facie case for plea withdrawal.  There, we differentiated the facts and explained that "unlike in *T.A.D.S.*, the trial court did not advise A.G. that the 'driving factor' or 'the most important factor' at the dispositional phase would be the child's best interest." *Id.*, ¶20.  We note that after additional proceedings, *State v. A.G.*, No. 2022AP652, unpublished slip op. (WI App July 12, 2022) has been appealed to the Wisconsin Supreme Court.  We consider this case to be akin to *A.G.* and *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, 314 Wis. 2d 493, 762 N.W.2d 122, not *T.A.D.S.*  In *Therese S.*, this court concluded that "the parent must be informed of the statutory standard the court will apply at the second stage" of TPR proceedings. *Id.*, ¶16.

¶22    Further, we conclude that Nico's postdisposition motion satisfied the second prong of a ***Bangert*** motion—that he "did not know or understand the information that should have been provided at the plea hearing." *See **Brown***, 293 Wis. 2d 594, ¶39.  Nico asserted in his postdisposition motion that he "did not know or understand the rights he was waiving when he entered the plea."  He further contends that there was nothing in the record to indicate that he had any understanding of the burden of proof beyond what was explained to him by the circuit court.  We conclude that Nico's allegation is sufficient to raise a question of fact. *See **State v. Hampton***, 2004 WI 107, ¶57, 274 Wis. 2d 379, 683 N.W.2d 14 ("The allegation that the defendant did not understand is, admittedly, conclusory; but the allegation raises a question of *fact* and perhaps law that requires resolution.")

¶23    We conclude that Nico has made a prima facie showing that his plea was not knowing, intelligent, and voluntary, and he is entitled to an evidentiary hearing on his claim.  Therefore, we reverse the order denying his postdisposition motion and remand for an evidentiary hearing.  We note, however, that we are not determining whether the circuit court should ultimately grant or deny Nico's motion to withdraw his plea.  In this process, the State will have an opportunity in the evidentiary hearing to present evidence relating to Nico's knowledge and understanding of the statutory standard that applies at disposition.  The entire record may be considered in this hearing. *See **Brown***, 293 Wis. 2d 594, ¶40.

II.    *Best interests of the child factors:  the child's wishes*

¶24    Nico's second argument takes issue with the second phase of the TPR proceedings—the dispositional phase.  The decision to terminate parental rights is within the discretion of the circuit court. *See **Gerald O. v. Susan R.,*** 203

Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. *Dane County DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶25     In the dispositional phase, the circuit court decides whether the evidence warrants the termination of parental rights and if the termination is in the best interests of the child. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶23, 246 Wis. 2d 1, 629 N.W.2d 768. "During this step, the best interests of the child are paramount." *Id.*; *see* WIS. STAT. § 48.426(2). When determining whether a TPR is in a child's best interests, the circuit court "shall consider," but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3). We defer to the circuit court's determination of the proper weight of each factor when the court properly examines each factor on the record. *State v. Margaret H.*, 2000 WI 42, ¶29, 234 Wis. 2d 606, 610 N.W.2d 475.

¶26 Nico argues that the circuit court's decision to terminate his parental rights was erroneous because of the assumptions the court made about Everett's wishes with regard to the termination, the fourth factor under WIS. STAT. § 48.426(3). He contends that Everett was too young to express his wishes; therefore, the court's conclusion that Everett would want to stay where he is—with the foster family—did not demonstrate rational decision making.

¶27 The State argues that the circuit court's reasoning is supported by the record, which reflects that the case manager testified about her specific observations that Everett views the foster family's residence as his home, referring to objects in the house as "mine" and referring to his bedroom as "my room." The GAL argues that the circuit court acknowledged that Everett at three years old was too young to express his wishes; however, the court drew a reasonable inference that Everett would wish to stay in the only home he has know. The record reflects that Everett had been placed with the foster family since he was two weeks old and he called his foster parents "mama" and "daddy."

¶28 When we review the circuit court's considerations of the statutory factors, we are ensuring that each factor has been considered, but it is within the circuit court's province to assign the appropriate weight. *See Margaret H.*, 234 Wis. 2d 606, ¶¶29, 35. Further, we search the record to support the circuit court's decision making, not to discern support for alternative reasoning or outcomes. *See Lofthus v. Lofthus*, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393. While the wishes of three-year-old children may be unclear because they do not

have the language or opportunity to voice their opinions, here, we discern support for the circuit court's decision making in the record. The court's conclusion was not unreasonable.[7] Therefore, this court concludes that the circuit court considered the relevant facts under the proper standard of law and demonstrated rational decision making when it ordered the termination of Nico's parental rights.

## CONCLUSION

¶29 For the reasons stated above, first, we conclude that the postdisposition court erroneously denied Nico's postdisposition motion for plea withdrawal because he alleged a prima facie case for plea withdrawal. We reverse this order and remand with directions to hold an evidentiary hearing on this claim. Second, we conclude that the circuit court's decision to order the TPR was not an erroneous exercise of discretion and we affirm that order.

*By the Court.*—Termination order affirmed; postdisposition order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] We note that the statutory factors must be considered in every involuntary TPR disposition, regardless of the age of the child. That the wishes may be difficult to discern for young children does not negate the court's need to consider this factor based upon the facts and inferences from facts in the record. Further, no single factor is dispositive to the disposition and the weight assigned to each factor is within the discretion of the circuit court. *See State v. Margaret H.*, 2000 WI 42, ¶¶29, 35, 234 Wis. 2d 606, 610 N.W.2d 475.