**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 9, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2020AP1778
2020AP1779
2020AP1780**

Cir. Ct. Nos.  2018JC120
2018JC121
2018JC122

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

---

NO. **2020AP1778**

IN THE INTEREST OF A.N.B., A PERSON UNDER THE AGE OF 18:
STATE OF WISCONSIN,

　　PETITIONER-RESPONDENT,

　V.

E.R.W.,

　　RESPONDENT-APPELLANT.

---

NO. **2020AP1779**

IN THE INTEREST OF M.W.B., A PERSON UNDER THE AGE OF 18:
STATE OF WISCONSIN,

　　PETITIONER-RESPONDENT,

　V.

E.R.W.,

**RESPONDENT-APPELLANT.**

---

**No. 2020AP1780**

**IN THE INTEREST OF E.L.G., A PERSON UNDER THE AGE OF 18:**
**STATE OF WISCONSIN,**

    **PETITIONER-RESPONDENT,**

  **V.**

**E.R.W.,**

    **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Kenosha County: DAVID P. WILK, Judge. *Affirmed*.

¶1     DAVIS, J.[1]   In this consolidated appeal, "Eileen" appeals from: (1) WIS. STAT. ch. 48 dispositional orders finding her children "Erika," "April," and "Mark"[2] in need of protection or services (CHIPS); and (2) an order denying her postdisposition motion to withdraw her no-contest pleas in the CHIPS actions. Eileen seeks review of the latter order on the grounds that the CHIPS petition does not reflect a sufficient factual basis for her pleas.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

[2] To preserve confidentiality, we refer to E.R.W. and her children by pseudonyms.

2

¶2 It is undisputed that the dispositional orders have expired and that our resolution of the plea withdrawal issue will have no practical effect on the closed CHIPS cases. We hold that, accordingly, the appeals of April's and Mark's cases are moot, as there are no lasting collateral consequences stemming from their orders. *See Marathon County v. D.K.*, 2020 WI 8, ¶¶19, 23-25, 390 Wis. 2d 50, 937 N.W.2d 901. We further hold that the appeal of Erika's case is not moot: because her dispositional order placed her outside the home, her CHIPS adjudication may form the partial basis for an involuntary termination of parental rights (TPR) action against Eileen. *See id.*, ¶25. Thus, a real and lasting collateral consequence exists with respect to that order.

¶3 On the merits of the appeal as to Erika, the facts in the CHIPS petition show that, on a regular basis and over a number of years, Eileen neglected to provide sufficient food for Erika. Thus, there is a factual basis for the CHIPS allegation that Eileen neglected, refused, or was unable, for reasons other than poverty, to provide necessities for Erika, so as to seriously endanger Erika's physical health. *See* WIS. STAT. § 48.13(10). Accordingly, we affirm.

## BACKGROUND

¶4 In August 2018, the State filed CHIPS petitions pursuant to WIS. STAT. 48.13(10), alleging that Eileen's neglect, refusal, or inability to provide for her three children posed a serious danger to their physical health. The main allegation was that, on frequent occasions and for extended lengths of time, Eileen left then-thirteen-year-old Erika in charge of eight-year-old Mark and six-year-old April. During those times, Erika had access to a phone that made 911 calls, but there was otherwise no phone or internet service. According to the petition, there

3

was little food in the house, the house was dirty, and neighbors reported caring for and feeding the children.

¶5      In December 2018, Eileen pled no contest in all three cases; in exchange, the State dismissed criminal charges based on the same conduct alleged in the CHIPS petitions. In January 2019, the circuit court entered dispositional orders. April and Mark were placed in-home; Erika was placed in foster care, but placement was later changed to in-home. As amended (in Erika's case), the orders expired in January 2020, Eileen having successfully completed the conditions of continued placement.

¶6      In July 2020, Eileen brought a postdisposition motion, seeking plea withdrawal on the grounds that there was an insufficient factual basis for her plea. The circuit court denied the motion, and this appeal followed. We will discuss additional facts below.

## DISCUSSION

### *Mootness*

¶7      As a threshold matter, the State argues that this appeal is moot because the dispositional orders have expired. Mootness is a doctrine of judicial restraint, under which we may decline to review an issue where our decision would have no practical effect on a live controversy. *D.K.*, 390 Wis. 2d 50, ¶19. Our supreme court, in an analogous context, recently reiterated that an appeal is not moot where collateral consequences stem from the expired order. *See id.*, ¶¶22-25 (firearms ban, resulting from expired WIS. STAT. ch. 51 commitment order, constitutes a collateral consequence rendering appeal not moot). Moreover, even where an issue is moot, we may elect to review it as falling under a

recognized mootness exception; for example, where the issue "arises often and a decision from this court is essential" or "is likely of repetition and evades review." ***D.K.***, 390 Wis. 2d 50, ¶19.

¶8 Eileen argues that the three individual appeals in this consolidated appeal are not moot, but for different reasons. As to the appeal of Erika's case, Eileen points out that a CHIPS adjudication under WIS. STAT. § 48.13(10) may form the partial basis for a subsequent TPR action. This is because, pursuant to WIS. STAT. § 48.415(2)(am)1.:

> Grounds for termination of parental rights shall be one of the following:
>
> ….
>
> That on 3 or more occasions the child has been adjudicated to be in need of protection or services under [§ 48.13(10)] and, in connection with each of those adjudications, has been placed outside his or her home ….

We find Eileen's reasoning persuasive. Although there is only an indirect connection between a single CHIPS adjudication and TPR grounds, the former may increase the likelihood of the latter. Accordingly, we find that the appeal as to Erika is not moot.

¶9 Eileen acknowledges that Mark's and April's CHIPS adjudications do not carry the same collateral consequence, as these younger children were not placed outside the home. Nonetheless, Eileen argues broadly that their cases are not moot because of the "lasting reputational damage" resulting from the CHIPS orders. Eileen does not flesh out this argument in any depth, however, so as to apply this general principle to her own situation. Specifically, Eileen does not articulate why or how she might incur reputational damage, given that, as she

concedes, CHIPS orders are confidential. Thus, whether this argument can be best be characterized as lacking in merit or insufficiently developed, the result is the same: Eileen cannot show that the appeals of Mark's and April's cases are not moot. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address undeveloped arguments). Eileen, moreover, concedes that these appeals do not implicate one of the established exceptions to the mootness doctrine. *See* ***D.K.***, 390 Wis. 2d 50, ¶19. Accordingly, on mootness grounds, we will not address Mark's or April's appeals, as a decision on the merits would neither bear on their CHIPS status nor carry any lasting consequences for them or Eileen.

¶10 Eileen argues that notwithstanding the above, we should review the younger children's appeals because their cases are intertwined with Erika's. As a practical matter, this is largely true, but that does not change the fact that these cases are moot. Accordingly, the remainder of this decision will ignore any facts solely pertaining to April's or Mark's CHIPS status, and we will focus only on whether there was a sufficient factual basis for adjudging Erika CHIPS.

### *Plea Withdrawal*

¶11 Eileen seeks review of the circuit court's order on her postdisposition motion, alleging that the lack of a factual basis for her CHIPS plea constitutes a manifest injustice warranting plea withdrawal. We begin with some background on plea withdrawal in the criminal context, including the requirement that there be a factual basis for the plea. We also discuss whether and how these criminal law principles apply to CHIPS cases. Next, we discuss the standard of review governing this appeal, and we analyze the merits of Eileen's motion.

Plea Withdrawal in the Criminal and WIS. STAT. ch.48 Contexts

¶12   After sentencing, a criminal defendant is entitled to withdraw his or her guilty or no-contest plea upon establishing, by clear and convincing evidence, that there has been a "manifest injustice," *State v. Denk*, 2008 WI 130, ¶31, 315 Wis. 2d 5, 758 N.W.2d 775—that is, "a serious flaw in the fundamental integrity of the plea," *State v. Thomas*, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836 (citation omitted).  One such "manifest injustice" is the lack of a factual basis for the plea.  *White v. State*, 85 Wis. 2d 485, 488, 271 N.W.2d 97 (1978).

¶13   A plea lacks a factual basis where the conduct admitted to does not constitute the offense charged.  *Id.*  In *White*, for example, there was no factual basis for the plea to theft of a chainsaw valued above $150 because there was no evidence in the record establishing the saw's value.  *Id.* at 489-91.  A factual basis may also be lacking where the defendant admits to a set of facts constituting the charge while continuing to maintain a complete defense to that charge.  Thus, in *State v. Lackershire*, 2007 WI 74, ¶¶29, 38, 301 Wis. 2d 418, 734 N.W.2d 23, there was no factual basis for the charge of sexual assault of a child because the defendant, although admitting to having sexual intercourse with a minor, maintained that she was raped by the minor.

¶14   The factual basis requirement has both statutory and constitutional dimensions.  Under WIS. STAT. § 971.08(1)(b), before the court accepts a plea, it must "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged."  *See State v. Black*, 2001 WI 31, ¶11, 242 Wis. 2d 126, 624 N.W.2d 363.  An analogous statute applies to CHIPS actions (more on that below).  More fundamentally, this requirement helps ensure that the plea comports with due process—that it is "knowing, intelligent, and voluntary," *State v. Brown*,

7

2006 WI 100, ¶¶19, 25, 293 Wis. 2d 594, 716 N.W.2d 906—by protecting a defendant who might enter a plea without knowingly or intelligently appreciating that the facts do not fit the crime, *Lackershire*, 301 Wis. 2d 418, ¶35.

¶15 A defendant seeking plea withdrawal after sentencing (be it on "factual basis" or any other grounds) has two methodological or procedural paths available. *State v. Sulla*, 2016 WI 46, ¶25, 369 Wis. 2d 225, 880 N.W.2d 659. The first, a *Bangert*[3] motion, alleges that the circuit court failed to fulfill its statutory or judicially mandated plea colloquy duties. *See State v Howell*, 2007 WI 75, ¶¶26-27, 301 Wis. 2d 350, 734 N.W.2d 48. The second, a *Nelson/Bentley*[4] motion, alleges some extrinsic defect, such as ineffective assistance of counsel. *Howell*, 301 Wis. 2d 350, ¶74. A defendant may invoke both *Bangert* and *Nelson/Bentley* with respect to the same underlying grounds for plea withdrawal, but each motion carries with it a distinct set of procedures and standards. *See Howell*, 301 Wis. 2d 350, ¶¶27-31, 73-79. We will discuss this point further below as it relates to Eileen's motion.

¶16 With these principles in mind, we turn to plea withdrawal in WIS. STAT. ch. 48 cases. We begin with TPR cases, which most seriously implicate the parent's constitutional rights and are thus most closely analogous to criminal cases. *See Steven V. v. Kelly H.*, 2004 WI 47, ¶¶21-22, 271 Wis. 2d 1, 678 N.W.2d 856 (parenting is a fundamental liberty interest protected by the Fourteenth Amendment; accordingly, TPR "adjudications are among the most

---

[3] *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

[4] *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), *modified by State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship'" (citation omitted)). In the TPR context, our supreme court has noted that WIS. STAT. § 48.422, a statute ensuring similar procedural safeguards as WIS. STAT. § 971.08,

> address[es] the concerns that 'the power of the state to terminate the parental relationship is an awesome one, which can only be exercised under proved facts and procedures which assure that the power is justly exercised … [and] that the parental rights will not be terminated precipitously, arbitrarily, or capriciously' without regard to the parents' rights.

*Burnett Cnty. DSS v. Kimberly M.W.*, 181 Wis. 2d 887, 892, 512 N.W.2d 227 (Ct. App. 1994) (second alteration in original; citation omitted), *overruled on other grounds by Steven V.*, 271 Wis. 2d 1, ¶52 n.9. Accordingly, the court held, the *Bangert* framework for evaluating claimed defects within the plea colloquy applies to TPR cases. *Kimberly M.W.*, 181 Wis. 2d at 892. Subsequent TPR cases have reiterated this point. *See, e.g.*, *Waukesha County v. Steven H.*, 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607; *Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶25, 293 Wis. 2d 530, 716 N.W.2d 845.

¶17 From our review, we could not identify any binding case law applying the *Nelson/Bentley* framework to TPR cases. We see no conceptual reason why it would not apply, but we also need not decide the point. This is because we conclude *infra* note 7 that Eileen's motion can best be characterized as a *Bangert* motion but that Eileen has not met her burden under either standard (this makes sense since, as we also explain below, a defendant must meet a higher pleading standard to succeed on a *Nelson/Bentley* motion). *See Howell*, 301 Wis. 2d 350, ¶¶28, 75. For our purposes, then, we assume without deciding that a

9

motion for plea withdrawal in a TPR case is subject to all the same principles, methodologies, and standards applicable to criminal cases.

¶18 Eileen's case, of course, is neither a criminal case nor a TPR case. But although the consequences of a CHIPS disposition are less severe, both CHIPS and TPR cases affect the parent-child relationship and implicate the constitutional right to parent. *See **C.N. v. Waukesha Cnty. Cmty. Hum. Servs. Dep't***, 143 Wis. 2d 603, 611, 422 N.W.2d 450 (Ct. App. 1988), *overruled on other grounds by **A.S. v. State***, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992); *see also **R.D.K. v. Sheboygan Cnty. Soc. Servs. Dep't***, 105 Wis. 2d 91, 105-06, 312 N.W.2d 840 (Ct. App. 1981). Moreover, the parties in this case take for granted that the criminal law/TPR framework applies, at least insofar as Eileen's appeal is concerned. Therefore, we will assume that the criminal law plea withdrawal framework applies to motions to withdraw no-contest pleas in CHIPS cases. We turn now to the application of those standards to the facts of this case.

Plea Withdrawal Framework Applied to Eileen's Appeal

### *Standard of Review*

¶19 We begin with our standard of review for evaluating the circuit court's conclusion that there was a factual basis for Eileen's no-contest plea. We note that standards of review on postsentencing motions for plea withdrawal are, at times, superficially contradictory. Taking the ten thousand-foot view, however, we conclude that our review of the issues in this appeal is entirely de novo, based on the following principles.

¶20 First, although plea withdrawal is generally considered within the circuit court's discretion, ***State v. McCallum***, 208 Wis. 2d 463, 473, 561 N.W.2d

707 (1997), a defendant is *entitled* to plea withdrawal upon establishing a manifest injustice, **Denk**, 315 Wis. 2d 5, ¶31. Put another way, where the defendant shows a manifest injustice, the circuit court's denial of the motion to withdraw constitutes an erroneous exercise of discretion. **State v. Rock**, 92 Wis. 2d 554, 559, 285 N.W.2d 739 (1979).

¶21 Second, there was no testimony presented below; instead, the parties stipulated to relying on the CHIPS petition as the factual basis for the plea. Where the factual basis for a plea derives from documents in the record, we are in the same position as the circuit court to draw factual conclusions from those documents. **State v. Peralta**, 2011 WI App 81, ¶16, 334 Wis. 2d 159, 800 N.W.2d 512. Accordingly, our review of the court's factual findings is de novo.[5] *See id.*

¶22 Third, we recognize that our courts have occasionally summarized our role on review by broadly referencing (while not necessarily applying) the "clearly erroneous" standard applicable to the circuit court's factual findings. *See, e.g.*, **State v. Smith**, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996) ("The determination of the existence of a sufficient factual basis lies within the discretion of the trial court and will not be overturned unless it is clearly erroneous."); **Broadie v. State**, 68 Wis. 2d 420, 423-25, 228 N.W.2d 687 (1975) ("Where the trial court has concluded that the evidence did provide a sufficient factual basis to support the plea, this court will not upset these factual findings unless they are

---

[5] A nuance to this case, which we discuss *infra* note 7 concerns whether we may rely on other parts of the record besides the CHIPS petition in determining whether there was a factual basis for the plea. As the circuit court never heard testimony at any point, nor had other cause to make credibility determinations or resolve factual disputes, the documents control, and our review is de novo regardless.

11

contrary to the great weight and clear preponderance of the evidence."). Such reference obscures the larger point: the proceedings below may have involved fact finding, but the application of a set of undisputed (or admitted-to) facts to a legal standard is *always* a legal determination.[6] **State v. Trochinski**, 2002 WI 56, ¶16, 253 Wis. 2d 38, 644 N.W.2d 891. And that is the scenario before us, as will be evident from our analysis below. Thus, we review de novo whether the facts Eileen admitted to satisfy the elements of WIS. STAT. § 48.13(10), the CHIPS allegation at issue. *See* **Peralta**, 334 Wis. 2d 159, ¶16; *see also* **Lackershire**, 301 Wis. 2d 418, ¶48 ("Factual basis cases typically involve the question of whether undisputed facts actually constitute the crime charged.").

### *Application to Eileen's Appeal*

---

[6] Courts' invocation of the "clearly erroneous" standard might also be informed by the language of WIS. STAT. 971.08(1)(b), which requires the circuit court to "[m]ake such inquiry *as satisfies it* that the defendant in fact committed the crime charged." (Emphasis added.) *See* **State v. Black**, 2001 WI 31, ¶¶11-12, 242 Wis. 2d 126, 624 N.W.2d 363. Such language, however, cannot reasonably be construed as requiring (and, simply put, cannot require) deference to the circuit court's legal conclusions. At least one decision raises this point. *See* **State v. Mendez**, 157 Wis. 2d 289, 295 n.2, 459 N.W.2d 578 (Ct. App. 1990) ("We seriously question whether [precedential case law] correctly holds that appellate review of a trial court's determination that a factual basis for a guilty plea exists presents a question of fact. While in some cases the trial court may need to engage in historical fact finding in order to determine whether a factual basis for a plea exists, the ultimate determination is that a given set of facts fulfills a particular legal standard. This presents a question of law." (citation omitted)). We note that the de novo component is clearer when the inquiry is viewed through the lens of whether the plea was knowing, intelligent, and voluntary. *See* **State v. Lackershire**, 2007 WI 74, ¶35, 301 Wis. 2d 418, 734 N.W.2d 23 ("A defendant's failure to realize that the conduct to which she pleads guilty does not fall within the offense charged is incompatible with that plea being 'knowing' and 'intelligent.'"); **State v. Brown**, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906 ("Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact. We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." (citation omitted)).

¶23 We turn now to whether the facts Eileen admitted to fulfill the elements of WIS. STAT. § 48.13(10), but we must first clear up two remaining points. The parties disagree about *which* documents we must consider when determining whether there was a factual basis for this CHIPS allegation. The State claims that we should consider the entire record, while Eileen would confine our analysis to the CHIPS petition itself.[7] As we discuss *supra* note 7, to settle this point definitively, we would need to make certain determinations relating to the procedural posture of this case. We need not settle this point, however, because

---

[7] The State correctly recites the general rule that, "when applying the manifest injustice test, 'a reviewing court may look beyond the plea hearing transcript' to the totality of the circumstances," including "the plea hearing record, the sentencing hearing record [and] other portions of the record." *State v. Cain*, 2012 WI 68, ¶¶29-31, 342 Wis. 2d 1, 816 N.W.2d 177 (citations omitted); *see also White v. State*, 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978) (in evaluating whether the plea lacks a factual basis, "this court may consider the whole record since the issue is no longer whether the guilty plea should have been accepted, but rather whether there was an abuse of discretion in the trial court's denial of the motion to withdraw"). Here, however, the circuit court denied Eileen's motion *without* an evidentiary hearing; as a technical point, therefore, the remedy Eileen seeks is an evidentiary hearing on what is either a *Bangert* or a *Nelson/Bentley* motion. And in that respect, our analysis differs depending on which motion Eileen brought below. A *Bangert* motion alleges some deficiency by the circuit court; accordingly, we confine our analysis to the plea hearing transcript and any stipulated-to documents forming the basis for the plea. *See Brown*, 293 Wis. 2d 594, ¶¶35-36, 39-42; *State v Howell*, 2007 WI 75, ¶¶61-66, 301 Wis. 2d 350, 734 N.W.2d 48. In contrast, a *Nelson/Bentley* motion points to some extrinsic defect; we therefore consider that motion, and any new facts alleged therein, with reference to the entire record. *Howell*, 301 Wis. 2d 350, ¶¶74-78. Eileen's motion can best be characterized as a *Bangert* motion, in that she alleges that the circuit court failed to "[m]ake such inquiries as satisfactorily establishes that there is a factual basis for the plea." *See* WIS. STAT. § 48.30(8)(c). We note that the pleading standard is lower on *Bangert* motions because the defendant need only make a prima facie showing of a defect within the plea colloquy. *See Howell*, 301 Wis. 2d 350, ¶¶26-29, 73-77. Thus, we need not definitively decide which motion Eileen brought; by treating this as a *Bangert* motion, we assign a relatively lower pleading burden to Eileen. Because we ultimately affirm the circuit court's order, we also need not consider whether an evidentiary hearing on remand would be helpful or necessary on this record. *See Lackershire*, 301 Wis. 2d 418, ¶48 ("In some ways … applying the *Bangert* procedure for failure to satisfy the factual basis requirement is an awkward fit. Factual basis cases typically involve the question of whether the undisputed facts actually constitute the crime charged. Where undisputed facts cannot constitute the crime charged as a matter of law, the defendant is allowed to withdraw her plea to prevent a manifest injustice.").

we cannot identify, and the State has not pointed to, any relevant facts outside the petition bearing on our analysis.[8] Accordingly, we analyze only the CHIPS petition to determine whether it establishes a factual basis for Eileen's plea.

¶24 Second, we must address an argument central to Eileen's appeal, relating to which facts (if any) *within* the CHIPS petition we should consider. As Eileen would have it, the petition is "so inconsistent" that it "fail[s] to provide a narrative sufficient to establish the requirements of WIS. STAT. § 48.13(10)." In Eileen's view, the petition contains so many discrepancies and contradictions that, essentially, it is unclear what is being admitted to. In the face of these discrepancies, Eileen asserts, the circuit court was required to "ma[k]e [an] effort to parse which of the [facts] she admitted to" so as to satisfy its statutory duties. *See* WIS. STAT. § 48.30(8)(c) ("Before accepting an admission or plea of no contest of the alleged facts in a [CHIPS] petition, the court shall … [m]ake such inquiries as satisfactorily establishes that there is a factual basis for the plea or admission …."). Put another way, Eileen appears to argue that even though she stipulated to using the petition as the factual basis, either *this* CHIPS petition was incapable of providing a sufficient factual basis at all *or* § 48.30(8)(c) nonetheless

---

[8] We use the qualifier "relevant" because the State would have us consider, in addition to the CHIPS petition, a portion of the dispositional report that discusses Eileen's "refusing to provide urine for drug analysis," "attempt[ing] to tamper with her urine sample," and not "return[ing] the next day to submit [another] sample." We are prepared to draw the most reasonable inculpatory inference from this report: that Eileen evaded getting a drug test because she had taken illegal drugs. *See **Black***, 242 Wis. 2d 126, ¶16 ("[A] factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant even though it may conflict with an exculpatory inference elsewhere in the record and the defendant later maintains that the exculpatory inference is the correct one."). Without additional context, however, we are unprepared to draw any conclusions as to how this drug use relates to Eileen's neglecting, refusing, or being unable to provide necessities for Erika so as to endanger Erika's physical health. *See* WIS. STAT. § 48.13(10).

required something more on the circuit court's part before the petition could so provide.

¶25 Eileen is correct in that the CHIPS petition contains contradictions. One might expect as much, given that the petition recounts conversations with three minor children and Eileen. The two younger children were occasionally unable to describe their living situation accurately, no doubt because of their age (for example, six-year-old April stated that Eileen goes grocery shopping "once a year"). Eileen, for her part, certainly had an incentive to minimize the extent of the problems in the house. Intake workers also recorded facts in the first portion of the petition that they later clarified upon further conversations. The result is a CHIPS petition that indeed contains contradictory facts or allegations. As one example, when a juvenile crisis worker first visited the house, "[t]he children reported the last time they ate was the previous day," but Erika later clarified that all three children ate that day. As another example, Eileen reported that Erika "only has to watch her siblings 1 or 2 days out of the week," but Erika stated that "she babysits her siblings 'almost daily.'"

¶26 Eileen is incorrect, however, in asserting that there was no factual basis for her plea *solely because* of these contradictions. Such argument, in fact, fundamentally misconstrues the import and effect of the guilty or no-contest plea. "[I]t is a well-established rule 'that what is admitted by a guilty or no contest plea is all the material facts alleged in the charging document.'" *State v. Liebnitz*, 231 Wis. 2d 272, 286-88, 603 N.W.2d 208 (1999) (citation omitted). It follows that "the essence of what a defendant waives when he or she enters a guilty or no contest plea" is a jury resolution, in the defendant's favor, of factual discrepancies within that document (or the record generally). *See Black*, 242 Wis. 2d 126, ¶16.

Thus, "a factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant even though it may conflict with an exculpatory inference elsewhere in the record and the defendant later maintains that the exculpatory inference is the correct one."[9]  *Id.* Accordingly, in determining whether a factual basis exists for a plea, we not only discount the existence of internal inconsistencies but we draw all reasonable inferences in favor of the State.

¶27      Therefore, the question before us narrows to whether the CHIPS petition, reasonably construed at its most inculpatory, *see id.*, alleges facts sufficient to meet the elements of WIS. STAT. § 48.13(10).  Subsection (10) establishes CHIPS jurisdiction where the parent "neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care[,] or shelter so as to seriously endanger the physical health of the child."  Thus, there are two elements to this allegation.  First, that the parent neglected, refused, or was unable to provide necessities for the child (poverty status constitutes an affirmative defense, but Eileen has not alleged its application

---

[9] Eileen further argues that the circuit court was required to determine which specific facts she admitted to—even in the face of her stipulating to relying on the CHIPS petition as the factual basis—because she "admitted to some, but not all, of the allegations in the petition."  If Eileen had, in fact, attempted to plead no-contest under some sort of reservation, we might need to determine whether the circuit court fulfilled its statutory duties both to "[m]ake such inquiries as satisfactorily establishes that there is a factual basis for the plea" and to "determine that the plea … is made voluntarily with understanding of the nature of the acts alleged in the petition and the potential dispositions."  *See* WIS. STAT. § 48.30(8)(a), (c).  But there is no indication that Eileen misunderstood the plea process or that some related irregularity occurred below.  At one point, the court took a recess so that Eileen's counsel could clarify the meaning of the no-contest plea.  When the hearing resumed, Eileen agreed on the record that although she "may not agree with everything that's in the petition," she was "not contesting the State's ability to prove the facts in the petition."  The circuit court was not foreclosed from accepting the plea merely because Eileen disagreed with certain facts in the petition, so long as she agreed that the State could prove those facts supporting the CHIPS allegation.  No error occurred below in this regard.

here). WIS JI—CHILDREN 250. Second, that the neglect, refusal or inability to so provide seriously endangered the child's physical health. *Id.* As one might expect, this second element does not require that the child already have been harmed; rather,

> [t]he physical health of the child is "seriously endangered" if the failure to provide creates a significant risk that the child will be seriously harmed or injured…. [A]ctual harm or injury need not have occurred. In determining whether the physical health of the child was seriously endangered, [the jury] may consider the natural and probable consequences of the failure to provide. [The jury] may also consider the nature of any possible harm to the child and the level of risk that a particular harm will occur.

*Id.*; *see also* ***Z.E. v. State***, 163 Wis. 2d 270, 274-76, 471 N.W.2d 519 (Ct. App. 1991) (approving of prior jury instruction on § 48.13(10) worded to similar effect).

¶28  Construing the facts and reasonable inferences against Eileen, the CHIPS petition alleges the following. First, Eileen's house was in "poor condition" and was described as cluttered, messy, and dirty. There were no bugs or mold in the house, however, or hazardous conditions described.

¶29  Second, Eileen and her husband worked seventy-five hours per week, at least in some weeks, leaving Erika to babysit the younger children. Erika babysat most days but never, it appears, overnight or for a longer than twenty-four hours. Erika felt upset or overwhelmed by the amount of babysitting she had to do, which was in addition to cooking for the younger children and doing most of the cleaning in the house. Erika had a cell phone that could reach 911 but that could not otherwise place calls, and there was no landline or internet service in the house. Therefore, Erika could not easily contact an adult while she was babysitting (at least, not without leaving her house).

17

¶30 Third, this matter began when neighbors reported (among other things) that "they help take care of the children and get them food when they are hungry." The Kenosha County worker that first visited the family observed minimal food in the house. We do note, however, that in an unscheduled visit conducted the next day, another county worker observed a variety of food. The younger children could not always accurately describe when or how often they ate, and Erika responded, "No" when asked "if she feels like she and her siblings are going hungry." After the children were temporarily removed from the home, however,

> Kenosha Sheriff's Department deputies reported that they had been getting statements all day from the neighbors, who reported they often buy clothing and food for the children. Neighbors also reported that this has been going on for 2-3 years. The kids have been going to neighbors' homes asking for food and for money to get food.

¶31 Given that we are evaluating the CHIPS petition only as to Erika, we find that these first two allegations (concerning the state of the house and Erika's role as caregiver) do not support a CHIPS finding. Assuming without deciding that these allegations could demonstrate lack of necessary care or shelter, the facts do not sustain the conclusion that such neglect seriously endangered Erika's physical health. There is no evidence of either actual or "significant risk" of harm. WIS JI—CHILDREN 250. And although we might conceivably conclude that one "natural and probable consequence[]" of Erika's caregiver status is harm to the *younger children*, it would be speculative to conclude as much with respect to Erika. *Id.* Erika may have been placed in a role that was inconducive to the mental and emotional health of a thirteen-year-old girl. On this record, however, we cannot conclude that her physical health was threatened.

18

¶32     The third allegation, however, concerns a long-term pattern of insufficient food (and to a lesser extent, clothing) in the household. The reasonable inference from the neighbors' reports and statements[10] is that Erika either regularly went hungry or would have gone hungry but for the neighbors' intervention, performed as a necessity and at the childrens' request. We recognize that Erika herself told a county worker that she did not "feel like" she was "going hungry." At the post-plea stage, however, we consider the broader, complete picture, discounting this exculpatory fact in favor of others—in particular, the neighbors' reports—that are inculpatory. We note too that the neighbors' intervention does not *foreclose* a CHIPS finding. That is, the fact that the neighbors regularly fed the children, and did so over several years, does not alleviate the "significant *risk*" that Eileen's neglect itself created. *See* WIS JI—CHILDREN 250 (emphasis added); *see also **Z.E.***, 163 Wis. 2d at 274-75 (approving of jury instruction stating that the child was "seriously endanger[ed]" where "such harm could happen except for the intervention of others" (citation omitted)). It is also reasonable to conclude that a "natural and probable consequence" of insufficient food over several years' period is serious danger to the physical health of a growing girl. *See* WIS JI—CHILDREN 250. Therefore, we find that the CHIPS petition established a sufficient factual basis for adjudging Erika CHIPS.

---

[10] Eileen implies that we should discount references to the neighbors' reports because the CHIPS petition does not itself establish that those reports are accurate, but only that they were made. Essentially, we construe Eileen to argue that we may rely on some but not other hearsay (or hearsay-within-hearsay) in the petition—a position that has no legal basis. At the plea hearing itself, the circuit court's factual basis determination is not limited to consideration only of evidence that would be admissible at trial. ***Edwards v. State***, 51 Wis. 2d 231, 236-37, 186 N.W.2d 193 (1971). At the post-plea stage, we determine whether those facts, regardless of how they were adduced, constitute the offense charged. ***Id.*** at 236. By pleading no contest, Eileen has waived any hearsay or Confrontation Clause challenge to the facts and allegations within the CHIPS petition.

¶33   We recognize that Eileen now disputes the allegations in the CHIPS petition, and this opinion is not intended to suggest that those allegations are accurate.  Rather, the only issue that we can, and do, consider is whether a factual basis existed in the petition from which the circuit court could accept her no contest plea.  Because the petition alleged facts from which a reasonable fact-finder could find Erika CHIPS, we conclude that it met this standard.

¶34   A guilty or no-contest plea does not lack a factual basis merely because the stipulated-to charging document contains contradictory or inconsistent witness statements.  Rather, in reviewing a plea withdrawal motion, we must examine whether the most inculpatory facts, and any reasonable inferences that can be drawn from them, meet the elements of the charge.  Here, the CHIPS petition contains sufficient facts establishing that Eileen's neglect, refusal, or inability, for reasons other than poverty, to provide food for Erika posed a serious danger to Erika's physical health.  *See* WIS. STAT. § 48.13(10).  Consequently, the circuit court did not err in denying Eileen's motion to withdraw her plea on factual basis grounds.[11]

*By the Court.*—Orders affirmed.

---

[11] Because we affirm on the grounds that there was a factual basis for Eileen's plea, we need not decide the State's other arguments, except to address one point. *See* ***Sweet v. Berge***, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (not addressing additional bases to sustain where one basis is dispositive).  The State appears to argue that Eileen's "conced[ing] in her colloquy that there was enough in the petition for the court to find that the children were [CHIPS]" is in of itself proof of a sufficient factual basis for the plea. We have previously rejected this argument (couched in terms of judicial estoppel) because it "creates a scenario in which a defendant can plead guilty to an offense which was not committed." *See* ***Mendez***, 157 Wis. 2d at 294.  To reiterate a point made elsewhere in this decision:  the existence of a factual basis for the plea is a legal conclusion.  Thus, a defendant may admit to the underlying facts and even agree that a factual basis exists, but the defendant cannot stipulate to a legal conclusion so as to foreclose any appeal on "factual basis" grounds.

This opinion will not be published. *See* W<small>IS</small>. S<small>TAT</small>. R<small>ULE</small> 809.23(1)(b)4.