COURT OF APPEALS
DECISION
DATED AND FILED

April 2, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2025AP1476**
**2025AP1477**
STATE OF WISCONSIN

Cir. Ct. Nos. 2022TP147
2022TP148

IN COURT OF APPEALS
DISTRICT I

---

APPEAL NO. 2025AP1476

IN RE THE TERMINATION OF PARENTAL RIGHTS TO L.R.P., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

B.A.J.,

      RESPONDENT-APPELLANT.

**APPEAL NO. 2025AP1477**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.P., JR., A
PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

     PETITIONER-RESPONDENT,

  V.

B.A.J.,

     RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1    GEENEN, J.[1] Bethany appeals from the circuit court's orders terminating her parental rights to two of her children, Lydia and Daniel, and denying her postdisposition motion to withdraw the no contest pleas she entered as to the grounds for termination in each case.[2] Bethany argues that she was not competent when she entered the pleas and therefore the pleas were not knowing, intelligent, and voluntary. Because we conclude that Bethany did not meet her

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reading and to protect the confidentiality of these proceedings, we use pseudonyms to refer to all involved parties in this case.

burden to establish by clear and convincing evidence that plea withdrawal was necessary to prevent manifest injustice, we affirm.

## BACKGROUND

¶2 The medical and court records in this case establish that Bethany has suffered from various mental health conditions since childhood, including oppositional defiance disorder, depression, ADHD, unspecified mood disorders, and bipolar disorder. Bethany also has a history of drug addiction and has previously been confined to a mental health facility under WIS. STAT. ch. 51. Furthermore, on several occasions during the pendency of these termination of parental rights (TPR) proceedings, Bethany was confined to jail in Milwaukee and Sheboygan counties in unrelated matters, which resulted in delays in these TPR cases and made it more difficult for Bethany to appear in court and to communicate with her lawyer.

¶3 In 2022, the State filed petitions to terminate Bethany's rights to Lydia and Daniel. The TPR petitions alleged as grounds for termination that Lydia and Daniel remained children in continuing need of protection or services (CHIPS) pursuant to WIS. STAT. § 48.415(2), and that Bethany had failed to assume parental responsibility under § 48.415(6). Bethany initially contested the State's allegations as to the grounds in both TPR petitions.[3]

---

[3] Bethany's non-appearance at hearings in the fall of 2022 resulted in the entry of default against her, which resulted in orders terminating her parental rights. Those 2022 TPR orders were vacated when the court learned that Bethany's non-appearances occurred because she was incarcerated in Sheboygan County.

¶4    After these cases were reopened, a hearing was scheduled for March 7, 2023. Bethany was jailed at the time, and although the court had ordered Bethany to appear, a sheriff's deputy contacted the court and told the clerk that Bethany "is not able to make it. She had a meltdown." The record does not contain any additional details about what the "meltdown" entailed. The hearing was adjourned.

¶5    At the next status conference in May 2023, defense counsel explained that Bethany was still jailed in Sheboygan County and would likely remain so for an extended period, and that he only had one brief opportunity to speak with Bethany. Counsel also explained that Bethany's competency was questioned in the Sheboygan County case. The court responded that "[i]f there is an issue with her competency I think I need to know about it earlier," and indicated that it would require Bethany to appear in person at the next hearing.

¶6    Bethany appeared in person at the next status hearing, on June 13, 2023, with counsel. In light of their limited ability to meet prior to that hearing, counsel asked, and the court permitted, counsel to speak with Bethany in person after the hearing, before she returned to jail. After counsel's discussion with Bethany, the circuit court took the case back onto the record, and Bethany entered no contest pleas to the failure to assume responsibility for the children grounds.

¶7    Before accepting the pleas, the court conducted a thorough colloquy with Bethany. It asked questions to ascertain whether Bethany understood the court proceedings and the rights she was waiving. It asked Bethany if she had ever been diagnosed with a mental illness, to which she acknowledged only diagnoses of ADHD and OCD in middle school. While Bethany's response minimized the mental health diagnoses in her medical history, the court asked no

further competency-related questions. At the end of the colloquy, Bethany confirmed that she understood the rights she was waiving and reaffirmed that she wanted to enter pleas of no contest to the grounds of failure to assume parental responsibility.

¶8 The cases proceeded to dispositional hearing on September 22, 2023. Though she was supposed to appear in person, there was an issue with the order to produce, so Bethany appeared by Zoom. Bethany's behavior was very different than the prior hearing. Bethany disrupted the proceedings with a lengthy, rapid, and rambling monologue during which she claimed that everyone was working against her and that "they don't want me in court today because I been raped and stuff in prison and I said if I came to court today I would tell so they rescheduled the court date on purpose and they didn't even tell my mom what is going on."

¶9 The hearing was rescheduled for October 4, 2023, but prior to the rescheduled hearing, Bethany's counsel filed a letter with the court expressing doubts as to Bethany's competency and requested that the court order a competency evaluation for Bethany. Counsel also asked to withdraw because Bethany no longer wanted him to represent her.

¶10 On October 4, 2023, the court addressed counsel's withdrawal request. Counsel indicated that he struggled to understand Bethany at times, that she becomes angry, and that she did not want counsel representing her. Bethany agreed, stated that "they are after me," that she was "very scared" and repeated the accusations about being raped and beaten while in custody. When asked by the court if she had ever been diagnosed with a mental disorder, Bethany said "ADHD, that's all." She also accused the children's foster parents of cutting her children's hair in an "African style," claimed that the foster father was present

5

when she was raped in jail, stated that her children's fathers were "rich rappers" and that one of the fathers had a "spaceship he brung [sic] to Sheboygan county."

¶11   Although counsel was seeking to withdraw from the case, counsel again expressed concern for Bethany's competency going forward, and suggested that vacating the no contest pleas may be appropriate if Bethany was found to be not competent.

¶12   The court ordered a competency exam for purposes of determining Bethany's competency moving forward, but not to "determine if the no contest plea[s were] knowing and voluntarily made" because "from the record," the court believed that [they were]." The court also granted counsel's withdrawal motion and appointed a guardian *ad litem* (GAL) for Bethany, as well as replacement counsel.

¶13   On October 17, 2023, the parties agreed to have Dr. Deborah Collins evaluate Bethany "only to determine whether or not she can assist [her attorneys] in preparing for her case and if she needed a [GAL]." Although Bethany's counsel and GAL both raised concerns about the competency evaluation and the validity of the no contest pleas, the court stated that it had already decided the issue and pointed to the "fairly good colloquy" with Bethany. The court observed that Bethany had been "very calm," that she had no questions when she entered her pleas, and that she was represented by counsel as the basis for concluding that "she understood what she was doing when she made the decision" to enter the pleas.

¶14   Dr. Collins evaluated Bethany and filed a corresponding report in November 2023. The competency evaluation concluded that "[Bethany] is presently rendered to lack substantial mental capacity to understand factually and

6

rationally the pending proceedings or to be of meaningful assistance in her behalf." Dr. Collin's indicated that Bethany is "laboring under paranoid, persecutory, evident delusional beliefs" which "are intertwined with, and distorting, her understanding of the matter before the court." Dr. Collins diagnosed Bethany with unspecified bipolar and related disorder with psychotic symptoms and unknown substance abuse disorders.

¶15 In light of the report's conclusions, counsel moved to adjourn the dispositional hearing to explore whether Bethany was incompetent at the time of her pleas and did not have a GAL to represent her best interest so that the pleas should be withdrawn. At a pretrial conference on March 19, 2024, Bethany's counsel explained that she was still attempting to obtain medical records related to the competency issues raised in the Sheboygan County criminal cases. Bethany's GAL also expressed "serious concerns that [Bethany] was able to make an intelligent and knowing decision at the time of the entry of the no contest plea[s]." The State and the children's GAL opposed the motion.

¶16 The circuit court denied the motion and ordered the case to proceed to the dispositional hearing. The court explained that "competency is not an issue in a civil case where she is represented by counsel and counsel believed that she was competent and said that her plea[s were] valid." The court indicated that it was not willing to "hold up this case for competency because she has a [GAL] for the dispositional hearing[.]" It expressed reluctance to undermine prior counsel's assessment of Bethany's ability to enter a plea, noted that Bethany's competency to enter the pleas was not raised by counsel until three months after she entered the pleas, and recalled that Bethany's answers and behavior during the colloquy were appropriate. On that basis, the court concluded that Bethany knew what she was doing when she entered her pleas.

¶17 Trial counsel subsequently obtained transcripts from the Sheboygan County cases and filed a formal motion to withdraw the pleas in the TPR cases. The court denied the motion, noting that despite the transcript's references to mental health issues, the Sheboygan County documents indicated that Bethany was observed but not treated, diagnosed, or placed in a mental health institution, and observed that the fact Bethany was sentenced indicates that the Sheboygan County court determined that there was not a competency problem. It further explained that, even if Bethany was incompetent, a trial would occur regardless, and though Bethany was unable to assist in her own representation, a GAL would act on her behalf and in her best interest.

¶18 The court immediately proceeded with the dispositional hearing, at the conclusion of which, the circuit court concluded that terminating Bethany's parental rights was in the children's best interests, and Bethany's parental rights were terminated.

¶19 Bethany filed a timely notice of appeal, and subsequently requested that this court remand the cases to the circuit court so that Bethany could pursue a postdisposition motion to withdraw her pleas. We remanded the matters, and Bethany filed a plea withdrawal motion and a supplemental report from Dr. Collins regarding Bethany's competency at the time her pleas were entered. Bethany requested a hearing on the motion in the circuit court, which was granted.[4]

---

[4] Prior to the postdisposition motion hearing, the circuit court considered which standard to apply to Bethany's motion and whether she was challenging the circuit court's denial of her predisposition plea withdrawal motion, or whether Bethany was seeking postdisposition plea withdrawal. The circuit court concluded that it was the latter, and that decision is not challenged on appeal.

¶20  At the hearing on the motion, Dr. Collins acknowledged the difficulties of retroactive assessments, and explained that her assessment was based on three separate medical reports taken over a span of ten years, court records, and an evaluation of Bethany.  Dr. Collins concluded that there were significant concerns about whether Bethany had been competent to enter a plea in June 2023, but acknowledged that she could not say with certainty if Bethany was competent or not competent at the time of the plea.

¶21  The postdisposition court concluded that Bethany had not met her burden of proving by clear and convincing evidence that, because of her mental health issues and history of psychosis, she was unable to comprehend the impact of her pleas at the time of the pleas.  It explained that Dr. Collins' testimony was not conclusive; that the Sheboygan County cases indicated that Bethany was observed for concerns related to competency and it concluded that she was competent; that Bethany's March 2023 "meltdown" was not strong evidence of a mental health issue because of the limited information about what actually occurred; and that the indicators contemporaneous with the pleas—i.e. her conduct and responses at the plea hearing—demonstrated that Bethany was competent at that time.

¶22  The postdisposition court denied the motion to withdraw the pleas. Bethany now appeals.

**DISCUSSION**

**I.    Standard of Review**

¶23  A party is entitled to postdisposition plea withdrawal only if he or she establishes a "manifest injustice" by clear and convincing evidence.  ***State v.***

9

***Bentley***, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). A plea was that was not knowingly, intelligently, or voluntarily entered may constitute a manifest injustice. ***State v. Taylor***, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482. Whether a plea was knowingly, intelligently, and voluntarily entered is a question of constitutional fact. ***State v. Brown***, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906. This court must "accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous," but the court determines "independently whether those facts demonstrate that the [parent's] plea was knowing, intelligent, and voluntary." ***Id***.

¶24 On appeal, Bethany argues that the circuit court erred when it found that she failed to establish by clear and convincing evidence that she was not competent to enter no contest pleas as to the grounds because "[t]he appellate record is rife with evidence supporting a finding of incompetency," and denied her motion for plea withdrawal. Bethany points to her March 2023 "meltdown," her medical history, Dr. Collins' initial and supplemental reports, and other circumstantial evidence from the Sheboygan County case records as evidence that she did not knowingly, intelligently, and voluntarily enter the pleas.

¶25 As Bethany notes, none of the evidence she relies on is dispositive of her competency or lack of competency at the June 2023 plea hearing. The circuit court was required to make a conclusion on the plea withdrawal motion based on all of the evidence before it. While Bethany's counsel raised significant competency concerns, he did so several months after the pleas were entered. And, while replacement counsel and Bethany's GAL raised concerns about Bethany's competency, the concerns were related to specific conduct that occurred after Bethany entered her pleas. Furthermore, Dr. Collins concluded in her supplemental report that there were significant concerns about whether Bethany

was competent to enter a plea in June 2023, but acknowledged that she could not say with certainty if Bethany was competent or not competent at the time of the plea.

¶26    The court was able to consider Bethany's conduct at the time of the pleas and found it significant that Bethany was represented by counsel who supported her entering the pleas. Based on its own recollection and the plea hearing transcript, the court found Bethany's conduct and responses appropriate. Bethany's counsel agreed that nothing in the plea hearing transcript suggested an obvious competency problem, and she admits that the Sheboygan records are not dispositive. The concerns about Bethany's competency arose when she engaged in erratic behavior during a subsequent hearing several months after she entered her pleas.

¶27    It is clear from the record that Bethany suffers from numerous complicated mental health disabilities and conditions and that she has been incompetent to act in her own interest on more than one occasion, sometimes for extended periods of time. There is no dispute that Bethany was not competent to represent her own interests in this case starting as early as November 2023. However, Bethany met with counsel in person on the day that she entered the pleas, and following that meeting, counsel recommended she enter the pleas despite knowledge of a prior competency concern in the Sheboygan County case; at that hearing, Bethany acted and responded appropriately to the colloquy. Therefore, on the basis of all of the evidence in the record before us, it is not clear that Bethany was incompetent when she entered the no contest pleas to grounds in June 2023.

**CONCLUSION**

¶28    While we agree with Bethany that the record evidence and expert reports suggest a "questionable plea," Bethany was required to prove a manifest injustice—that she was not competent to enter a plea—by clear and convincing evidence in order to be entitled to plea withdrawal.  She did not meet her burden.  We therefore affirm the circuit court.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.